[No. 20453. In Bank. — December 14, 1888.]

THE PEOPLE, RESPONDENT, *v.* DANIEL MAHONEY, APPELLANT.

CRIMINAL LAW — MURDER — TAKING ARTICLES INTO JURY-ROOM — CONSENT OF DEFENDANT WAIVES ERROR. — In a prosecution for murder, the consent of the defendant to the taking by the jury, into the jury-room, of certain clothing worn by the deceased at the time of the killing, which had been exhibited and identified on the trial, but which had not been offered in evidence, is a waiver of any objection that might otherwise have been made to their action.

ID. — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — AFFIDAVITS MUST BE IDENTIFIED. — Affidavits purporting to have been used in support of a motion for a new trial on the ground of newly discovered evidence will not be considered on appeal from an order denying the motion, when not embodied in the bill of exceptions, and not certified to or indorsed by the

judge as having been so used. A certification by the clerk to affidavits not forming part of the record is insufficient.

ID. — OBJECTION TO OPINION OF EXPERT — EVIDENCE. — In a prosecution for murder, an objection to a question calling for the opinion of a medical expert, on the ground that no foundation had been laid for the testimony, will not support an objection to the opinion as given by the witness on the ground that it was incompetent evidence.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Taylor & Craig,* for Appellant.

The jury in taking the clothing of the deceased into the jury-room received evidence out of court, which irregularity is ground for a new trial. (Pen. Code, sec. 1137; *People* v. *Cochran,* 61 Cal. 551; *People* v. *Bush,* 68 Cal. 630; Bishop's Criminal Procedure, secs. 121, 827, 998.) The question asked the medical witness as to whether in his opinion the deceased could have shot himself was improper, as not calling for an expert opinion. (1 Bishop's Criminal Procedure, sec. 973; *Cook* v. *State,* 24 N. J. L. 843; *Wooden* v. *People,* 1 Park. Cr. 464; *Hastings* v. *Steamer Uncle Sam,* 10 Cal. 341; *Shafter* v. *Evans,* 53 Cal. 32; *People* v. *Westlake,* 62 Cal. 309.)

*Attorney-General Johnson,* for Respondent.

PATERSON, J. — The defendant was charged with the murder of one John H. Lannon on or about the nineteenth day of February, 1888, and the jury found him guilty of manslaughter.

After the jury had retired to deliberate upon their verdict, they requested through the deputy sheriff that a certain coat, alleged to have been worn by the deceased at the time of the killing, should be sent into the jury-room for their inspection. The transcript certified by the judge states that the coat "was the one which had

been produced and examined in open court during the examination of the witnesses Carpenter and Lannon, and at said time exhibited to the jury. After the retirement of the jury the officer in charge of the jury informed the trial judge that the jurors had expressed a desire to see the coat. The court informed counsel, in the presence of the defendant, that the jurors had requested that the coat be sent into the jury-room for their inspection. Thereupon defendant's counsel stated that the coat had not been formally offered in evidence. In response to that suggestion the court said that if the coat was not in evidence, the jurors would have to get along without the coat. Counsel for defendant thereupon, after a moment's reflection, and in presence of the defendant in open court, consented that the coat might be submitted to the jury. Thereupon the package containing the coat and other clothes, said to have been worn by deceased at the time of the homicide, was produced in open court, in view of counsel and defendant, and the contents examined, and the officer, without any objection whatever, was allowed to take the coat into the jury-room. At the same time defendant's counsel objected to the officer's taking the blood-stained collar, said to have been worn by the deceased, and the court directed said officer not to take such collar, and it was not taken to the jury-room." The articles sent to the jury had been examined before the jury, and identified as the clothing worn by deceased at the time of his death. As stated by counsel for the defendant, when the proposition was made to send them to the jury, while they were deliberating upon their verdict, the articles "had not been formally offered in evidence." But the clothing had been exhibited to the jury, and referred to by the witnesses on the stand. The consent of counsel for defendant, in the presence of the defendant, that the articles might be sent to the jury, was a waiver of all

objection, and we see no error in the action of the court or jury.

The defendant moved for a new trial, on the ground, among others, of newly discovered evidence, but the affidavits in support thereof are not in the transcript. The transcript was filed on June 25, 1888. A document was filed September 5, 1888, containing what purports to be affidavits in support of the motion for a new trial, with a certificate of the clerk thereto attached, that they are "correct copies of the affidavits of Daniel Mahoney, J. B. Goldstone, E. Benjamin, Leon Deshayes, and Thomas Price, used and read upon defendant's motion for a new trial, herein," etc. There is no certificate or indorsement by the judge to show what affidavits were used or considered, and they do not appear in the bill of exceptions. The certificate of the clerk cannot be taken as a sufficient identification. The copies filed herein are "mere loose papers, not embodied or referred to in any statement or bill of exceptions, and thus want the authentication essential to constitute any portion of the record." (*People* v. *Price*, 17 Cal. 313; *People* v. *Padillia*, 42 Cal. 535.)

The most serious question in the case is that which relates to the testimony of Dr. B. F. Carpenter. During his examination the following proceedings were had:—

"Q.—From an examination of the wound and the course of the bullet, in your opinion would it have been possible for defendant to have shot himself?

"Objected to by defendant's counsel as incompetent, *no foundation having been laid for it*.

"District attorney.—Then I will lay the foundation.

"Q.—How long have you been practicing medicine?

"A.—Five years. I make an autopsy about every other day,—not gunshot wounds every other day, but autopsy. We have gun-shot wounds quite frequently. Every time a man is shot in the city we study the course of the bullets, and the direction. I did not see clothing on his person.

"Q.—From the position this bullet went in the clothing, tell us whether or not, in your opinion, the deceased could have shot himself.

"Objected to by defendant's counsel as incompetent and irrelevant, *no foundation being laid for the testimony.* The court overruled the objection, to which ruling the defendant by his counsel excepted.

" A.— No, sir; he did not."

When the question was first asked, counsel for defendant objected to it on the ground that it was incompetent, no foundation having been laid for it. The district attorney said: "Then I will lay the foundation," and proceeded to examine the physician as to his experience in the examination of gun-shot wounds. The question was then again put to him whether in his opinion the deceased could have shot himself, and was objected to by defendant's counsel on the ground that it was incompetent and irrelevant, *no foundation being laid for the testimony.* It appears quite clear, therefore, that the only question upon which the court was asked to pass was, whether the witness had had sufficient experience in such matters to entitle him to speak as an expert,—to give his opinion,—not whether the opinion, if given, was competent evidence. The objection made was not specific, if the point now urged was the one which counsel desired the court to pass upon at the trial. Furthermore, the answer of the witness to the question was: "No sir; he did not." This was not responsive to the question, and might have been stricken out on motion. No motion to strike it out was made. We therefore conclude that the judgment ought not to be reversed on the ruling of the court. The evidence, we think, was sufficient to justify the verdict.

Judgment and order affirmed.

SEARLS, C. J., McFARLAND, J., and THORNTON, J., concurred.

Rehearing denied.