562:38 LRA733
39 LRA 314

[Crim. No. 214.    In Bank.—April 23, 1897.]

# THE PEOPLE, RESPONDENT, *v.* BENJAMIN L. HILL, APPELLANT.

CRIMINAL LAW—HOMICIDE—DEFENSE OF INSANITY—EXPERT EVIDENCE— REBUTTAL.—Where, upon the trial of a defendant accused of the murder of his wife, the defendant offered evidence tending to prove the defense of insanity, and the prosecution, to rebut the inference of insanity, offered the expert evidence of a physician, who, in response to a hypothetical question, gave it as his opinion that defendant was sane at the time of the homicide, such opinion is not new matter, but simply matter in contradiction of defendant's evidence, and the defendant is not entitled to offer in rebuttal the opinion of another expert to the contrary, such evidence being properly part of defendant's evidence in chief.

ID.—HYPOTHETICAL QUESTION TO EXPERT—THEORY OF QUESTIONING PARTY —STATEMENT OF EVIDENCE—CROSS-EXAMINATION—QUESTION FOR JURY. It is not necessary, in framing a hypothetical question put to an expert for his opinion, to include a statement of all the evidence in the case, but the question may be framed upon any theory of the questioning party which can be deduced from the evidence, and the statement may assume any facts within the limits of the evidence, upon which the opinion of the expert is desired, and may omit any facts not deemed by the questioner material to the inquiry; and where the theory of the prosecution in questioning an expert witness upon direct examination, does not accord with the theory of the defendant, he may upon cross-examination, put hypothetical questions to the witness framed upon his theory of the evidence, and take his opinion thereon, leaving to the jury the question as to which theory, if either, was warranted by the evidence.

ID.—MURDER OF WIFE—EVIDENCE OF UNCHASTE CONDUCT—KNOWLEDGE OF DEFENDANT.—Upon the trial of a defendant accused of the murder of his wife, evidence of her unchaste conduct is not admissible, unless proved to have been communicated to the defendant before the homicide.

ID.—ANONYMOUS LETTERS—CONVERSATION WITH DEFENDANT.—The defendant cannot prove statements made by him to another person in regard to anonymous letters received by him relating to the conduct of his wife.

ID.—OPINION EVIDENCE—PROBABLE POSITION OF DECEASED WHEN SHOT WAS FIRED—HARMLESS ERROR.—The probable position of the person of the deceased toward defendant when the fatal shot was fired, is not a proper subject of expert testimony, or opinion evidence, but the error in allowing such evidence is harmless, where no question is made as to the killing of the deceased by the defendant by shooting her with a pistol, and the jury could not have been prejudiced thereby.

ID.—RIGHT OF JURORS TO DISAGREE—UNNECESSARY INSTRUCTION.—The right of any juror to refuse to concur in any verdict unsatisfactory to him, is matter of such common or universal knowledge, that it is not

error to refuse to instruct the jurors as to such right at the request of the defendant.

ID.—DUTY OF JUDGE—FORMS OF VERDICT—PRESUMPTION—OMISSION OF FORM—DEGREES OF MURDER.—The law does not make it part of the duty of the judge, upon the submission of a criminal cause, to furnish forms of verdict to the jury, but they are presumed to be able to formulate their own conclusions; and when the jury has been properly instructed as to the different degrees of murder, the furnishing to them by the court of forms of verdict, with the exception of a form for a verdict for murder of the second degree, has no necessary tendency to preclude them from finding such a verdict, and is not reversible error.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. F. B. OGDEN, Judge.

The facts are stated in the opinion of the court.

*Carroll Cook,* and *Tom M. Bradley,* for Appellant.

The court erred in refusing to allow the defendant to put a physician upon the witness stand to testify to the defendant's insanity in rebuttal of the opinion evidence introduced by the prosecution. (*Webb* v. *State,* 9 Tex. App. 490.) The testimony desired to be introduced was clearly rebuttal testimony, and should have been admitted as such in order to restrict the prosecution from adducing any surrebuttal thereto. It was not cumulative evidence. (*Marshall* v. *Davies,* 78 N. Y. 414; *Silverman* v. *Foreman,* 3 E. D. Smith, 322.) The court erred in overruling the defendant's objection to the hypothetical question asked Dr. Robertson, as it was not based upon the facts in the case and contained misstatements not in conformity with the evidence. (*People* v. *Dunne,* 80 Cal. 34; *Estate of Carpenter,* 94 Cal. 416.) It is inadmissible to permit an expert to give his opinion on anything short of the whole evidence in the case, whether he has personally heard it, or it is stated to him hypothetically. (*Webb* v. *State, supra.*) The court erred in ruling out the testimony of Lamont as to whether he had a conversation with the defendant in regard to some anonymous letters, as it was competent to show the feelings of the defendant toward his wife

at that time. (*Commonwealth* v. *Pomeroy*, 117 Mass. 143; *State* v. *Kelley*, 57 N. H. 549.) The court erred in allowing the witness, Dr. Hamlin, to answer the question asked him if he could tell by the location of the wound what position the body occupied with reference to the person firing the shots, as it was not shown that the witness was an expert upon the subject. (*People* v. *Smith*, 93 Cal. 447; *People* v. *Westlake*, 62 Cal. 309; *People* v. *Lemperle*, 94 Cal. 46.) It was error for the court to refuse to allow the witness, Peterson, to testify as to whether in his opinion the defendant was sane or insane, as he was an "intimate acquaintance" of the defendant, and therefore competent to give his opinion as to the defendant's insanity. (Code Civ. Proc., sec. 1870, subd. 10; *Estate of Carpenter*, 94 Cal. 413.)

*Attorney General W. F. Fitzgerald,* and *Deputy Attorney General Henry E. Carter,* for Respondent.

The refusal of the court to allow testimony in rebuttal upon the question of the defendant's insanity was not error. The examination of witnesses is within the discretion of the trial court, and abuse of such discretion must be shown to justify a reversal. (Code Civ. Proc., sec. 2044; Thompson on Trials, sec. 352; *Moran* v. *Abbey*, 63 Cal. 58; *People* v. *Clary*, 72 Cal. 60; *Bates* v. *Tower*, 103 Cal. 404.) The hypothetical question asked the witness, Dr. Robertson, was proper, as a hypothetical question may be based upon any state of facts which it is claimed the evidence justifies. (Thompson on Trials, secs. 604. 606, 608–10; *Harnett* v. *Garvey*, 66 N. Y. 641; *Lovelady* v. *State*, 14 Tex. App. 545, 560; *Guiterman* v. *Liverpool etc. S. S. Co.*, 83 N. Y. 358; *Cowley* v. *People*, 83 N. Y. 470; 38 Am. Rep. 464; *Filer* v. *New York etc. R. R. Co.*, 49 N. Y. 46; *People* v. *Goldenson*, 76 Cal. 328, 350; *Wintringham* v. *Hayes*, 144 N. Y. 1; 43 Am. St. Rep. 725; *Yardley* v. *Cuthbertson*, 108 Pa. St. 395; 56 Am. Rep. 218; *Quinn* v. *Higgins*, 63 Wis. 664; 53 Am. Rep. 305; *Meeker* v. *Meeker*, 74 Iowa, 352; 7 Am. St. Rep. 489.) Evidence of immoral conduct of

the wife was inadmissible, because it was not shown that the knowledge of such acts was communicated to the defendant. (*People* v. *Shattuck*, 109 Cal. 679, 681.) No prejudicial error was committed by permitting Dr. Hamlin to testify what position the body of deceased occupied with reference to the person firing the shots. There was no denying the fact of killing the deceased, and, therefore, no error could obtain in allowing this testimony. (*People* v. *Lemperle*, 94 Cal. 45.) Erroneous admission of evidence, if not prejudicial, is no ground for reversal. (*Solari* v. *Snow*, 101 Cal. 387; *People* v. *Clark*, 106 Cal. 32.)

VAN FLEET, J.—Defendant was convicted of murder of the first degree in the killing of his wife, Agnes Hill, and adjudged to suffer death. He appeals from the judgment and an order denying him a new trial, the exceptions urged all being based upon rulings at the trial.

1. To support the defense of insanity relied on by defendant, he introduced evidence tending to show certain peculiarities of temperament, disposition, and conduct in his father and in himself, from which an inference might have been drawn of a want of perfect mental balance in defendant at times. The prosecution did not attempt to controvert the facts thus shown, but, to rebut the inference of insanity therefrom, called Dr. Robertson as an expert on mental diseases, who, in response to a hypothetical statement of the facts, gave, as his opinion, that defendant was sane at the time of the commission of the act. Thereupon, defendant desired to introduce the opinion of a physician on his behalf in rebuttal of the opinion expressed by Dr. Robertson. The court refused to permit such evidence as rebuttal, on the ground that it was properly a part of defendant's case in chief, but offered to permit defendant to reopen his case for the purpose of putting in such evidence if he so desired. This offer was declined, and the

refusal to admit the evidence as rebuttal is now assigned as error.

The defendant was entitled to rebut any new matter offered on the subject by the people, but the evidence of the expert involved nothing new. It was purely evidence in contradiction of defendant's evidence, and nothing more. Its purpose and effect was, instead of denying the facts shown by defendant, to rebut by a perfectly proper method the inference sought to be drawn therefrom. It was only the *method* of meeting defendant's evidence, and not the matter which was new or different; no new fact was shown, and there was nothing, therefore, which was the proper subject of *rebuttal*. If defendant desired the opinions of experts to support the facts as to his state of mind, such evidence was a part of his original case.

2. Defendant objected to the hypothetical question put to Dr. Robertson, on the ground that it did not embrace a statement of all the evidence, and that it misstated that which it did embrace.

It is not necessary in framing a hypothetical question to include a statement of all the evidence in the case upon the subject of inquiry. While the question should have for its basis some probable, or at least possible, theory to be deduced from the evidence in the case, counsel have a right to frame the question to accord with their theory of what the material facts are as shown by that evidence, and in so doing may omit facts which from their point of view have no material bearing upon the subject. As stated by Mr. Thompson: "The hypothetical questions must be based either upon the hypothesis of the truth of all the evidence, or upon a hypothesis specially framed of certain facts assumed to be proved for the purpose of the inquiry. Such questions leave it for the jury to decide in the first case whether the evidence is true or not, and in the second case whether the peculiar facts assumed are or are not proved." (Thompson on Trials, sec. 604.)

"It is no objection to a hypothetical question," says that author, "that the state of facts which it assumes is erroneous, if within the possible or probable range of the evidence; since the judge cannot decide as a preliminary question on an objection to evidence, whether it is erroneous or not, the question being for the jury. . . . . It is the privilege of counsel in such cases to assume within the limits of the evidence any statement of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed. The facts are assumed for the purposes of the question, and for no other purposes." (Thompson on Trials, secs. 606–610.) The rule thus stated is amply sustained by the great weight of authority found in the adjudged cases. (See *People* v. *Durrant, ante,* p. 179.)

The question objected to did not depart from this rule. It contained a fair statement of the case, as embraced within the prosecution's theory of what the evidence established, and made no material misstatement of the facts. If the theory on which the question proceeded did not accord with that of the defendant as to the effect of the evidence, it was the privilege of the latter on cross-examination to put to the witness questions formulated upon his theory of the case, and take the opinion of the witness thereon, leaving to the jury the question as to which theory, if either, was warranted by the evidence.

3. There was no error in excluding the evidence of Dr. Webster, offered by defendant, tending to show that deceased had been guilty of unchaste conduct with other men during defendant's absence from home. There was no offer or attempt to show that knowledge of the facts was communicated by the witness to defendant before the homicide. The evidence was wholly immaterial for any purpose, and irrelevant to the issues before the jury.

The same is true of the evidence of the same general character sought to be elicited from the witness Susie

Bolden and others. The trial court very correctly ruled that it would not deny the privilege of showing any statement of the kind made to the defendant, but that it was "not a question in this action as to the morality or immorality, good, or bad character of Mrs. Hill. It is simply a question of what was said to the defendant with reference to that, and the effect those statements and that information might have had upon his mind."

Nor was there error in excluding the evidence of the witness Lamont as to a conversation with the defendant in regard to certain anonymous letters received by the latter relating to the conduct of his wife. The evidence was wholly without materiality, even if competent.

4. The question asked Dr. Hamlin as to the probable position of the person of deceased toward defendant at the time the fatal shot was fired, judged from the location of the wound, was clearly improper, and the objection thereto should have been sustained. The subject of inquiry involved no question of skill or science, and was not, as has been repeatedly decided by this court, a proper subject matter of expert testimony. (*People* v. *Westlake*, 62 Cal. 303, 309; *People* v. *Smith*, 93 Cal. 447; *People* v. *Lemperle*, 94 Cal. 46.) But while the evidence was erroneously admitted, it was manifestly harmless to defendant's case, since no question was made but that defendant killed the deceased by shooting her with a pistol, and there was no issue upon which the admitted evidence could have exerted any prejudicial influence with the jury. (See *People* v. *Lemperle*, *supra*.) The error, therefore, affords no ground for reversal.

5. We cannot say that the court erred in holding that the witness Peterson did not show himself an "intimate acquaintance" within the rule of the statute which requires a witness, not an expert, to sustain that relationship toward a party to qualify him to give his opinion on the subject of the latter's sanity. The question is largely one of discretion in the trial judge, and

his ruling will not be disturbed except for manifest abuse, which the record does not disclose. (*Estate of Carpenter*, 94 Cal. 413; *People* v. *McCarthy*, 115 Cal. 255.)

There are two or three further assignments as to rulings on evidence, but they require no special notice. We have examined them, and are satisfied they involve no material error.

6. The defendant asked an instruction to the effect that if, after a careful, honest, and impartial consideration of the law and the evidence, the jurors should honestly and conscientiously differ as to the weight and effect to be given the evidence, and the verdict to be rendered, or whether any verdict should be rendered, then they might disagree, if by an agreement any juror would be required to surrender his honest convictions as to any fact in the case. The instruction was refused, and it is complained that this was error.

The jury was fully and fairly instructed upon the affirmative propositions of law involved in the case, and their duty thereunder in weighing the evidence before reaching a verdict, from which the right and duty of any juror to dissent from a conclusion reached by his fellows with which he was not satisfied was necessarily implied; and, as the jury is presumed to be composed of men of ordinary intelligence and sufficient understanding to appreciate the full meaning and import of the charge of the court, the necessity for such an instruction as that requested, if proper to be given in any case, does not appear. Indeed, the right of a juror to refuse to concur in a verdict unsatisfactory to him, is a matter of such common—it might even be said universal—knowledge with men possessing the ordinary qualifications of jurors, that it would be hard to imagine a case calling for the suggestion of such right.

The other instructions requested and refused, so far as proper and pertinent to the case, are all fully and fairly covered in the charge of the court.

7. The jury were properly instructed as to the crime of murder both of the first and second degrees, and also

manslaughter, and that those three grades of homicide were included within the information; but in concluding its charge the court made this suggestion: "In accordance with the instructions which have already been given to you, gentlemen, there will be handed to you blank verdicts, one finding the defendant not guilty, one finding the defendant guilty of manslaughter, one finding the defendant guilty of murder in the first degree, and one finding the defendant guilty of murder in the first degree, and fixing the punishment at imprisonment for life."

It is complained that the court committed an error to defendant's prejudice in omitting to submit a form of verdict for murder of the second degree, and that by reason of such omission the jury were not given the opportunity to find a verdict of murder in that degree. Whether the omission was inadvertent or intentional does not appear, although from the fact that that degree of the offense was covered by the charge, and that a form of verdict for manslaughter was furnished to the jury, it is highly probable that the omission was unintentional. However that may be, we do not ascribe any such effect to the omission as that suggested by defendant. The law makes it no part of the duty of the judge to furnish forms of verdict to the jury, but the latter are presumed to be able to formulate their own conclusions, and in practice most usually do so. Where, therefore, the jury has been properly instructed as to the different degrees of the offense, it must be presumed that if their conclusion called for a form of verdict with which they were not furnished, they would either ask for it or write one for themselves. It certainly could have no necessary tendency to preclude them from finding such verdict.

We discover no reversible error in the record, and the judgment and order must be affirmed.

It is so ordered.

HARRISON, J., MCFARLAND, J., TEMPLE, J., BEATTY, C. J., and HENSHAW, J., concurred.