[Crim. No. 37.   Third Appellate District.—April 23, 1907.]

THE PEOPLE, Respondent, v. PHILIP JAMES, Appellant.

CRIMINAL LAW—MURDER—EXPERT EVIDENCE—HYPOTHETICAL QUESTION. In a prosecution for murder, a medical expert testifying for the prosecution may be asked a hypothetical question based upon the evidence for the prosecution. It was not necessary that it should include all of the evidence in the case.

ID.—WAIVER OF OBJECTION TO HYPOTHETICAL QUESTION—IMPROPER OBJECTION.—An objection to the form of a hypothetical question as involving a conclusion, which was not urged in the superior court, and which could not prejudice the defendant, is waived and a general objection that the question was a "hypothetical question not warranted by law," raises no issue and amounts to nothing.

ID.—INSTRUCTIONS—BURDEN OF PROOF AS TO ELEMENTS OF CRIME.— An instruction that "each and every fact and circumstance relied upon by the prosecution must be proved by the evidence beyond all reasonable doubt, and if the jury are not satisfied beyond a reasonable doubt that each such fact and circumstance has been proven, it is your duty to find a verdict of not guilty," is not prejudicial to the defendant, and is to be construed with other instructions given wherein the people's duty to prove beyond a reasonable doubt all the elements of the crime charged was clearly set forth.

ID.—PRESUMPTION OF INNOCENCE—INSTRUCTION REQUESTED BY DEFENDANT.—The defendant cannot complain of an instruction requested by himself, "that the presumption of innocence attaches at every stage of the case and to every fact essential to a conviction, and remains with the defendant throughout the trial until the contrary is established beyond a reasonable doubt."

ID.—HOMICIDE BY OFFICER—REFUSAL OF INSTRUCTIONS—PRESUMPTION OF OFFICIAL DUTY.—Where an officer was charged with murder, the court properly refused to instruct the jury "that the law presumes that, if the defendant was an officer and acting as such at the time of the alleged homicide, he was doing his duty," as it conveys the misleading suggestion that if the defendant was an officer he had the right to kill the deceased.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial.   E. C. Hart, Judge.

The facts are stated in the opinion of the court.

Charles B. Harris, and James L. Copeland, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

BURNETT, J.—Appellant was tried on an information charging him with murder, and he was convicted of manslaughter. He has appealed from the judgment and order denying his motion for a new trial. The assignments of errors relate to certain instructions given and refused and to the action of the trial court in overruling an objection to a hypothetical question addressed to one of the witnesses for the people. We will notice in the order presented in his brief all of the points upon which appellant relies for a reversal of the judgment.

Dr. Stevenson, a medical expert for the people, was asked this question: "Suppose a man weighing 130 pounds or thereabouts was struck with sufficient force by a man weighing 180, 190 or 200 pounds, to knock him down twice within a short period of time, the first blow being succeeded by a struggle, and during that struggle the smaller man was choked for a period of half a minute, at first lightly and then gradually increasing it until he let go his hold upon a revolver; after the second blow he had some difficulty in arising, but got up, walked a space of fifteen or twenty feet, or ten feet; then walked a space of thirty or forty or fifty feet without staggering; his muscles co-ordinating, and during that period, talks coherently. What can you say as to the mental condition of such smaller man?" Counsel for defendant made this objection: "I object to the question as not founded upon the facts as proven by the prosecution in this case." Thereupon, in response to the question by the court, "Wherein is it defective or wherein does it not conform to the facts?" counsel answered: "In this, that the witness Bridge called by the prosecution testified that when the defendant first got up, he staggered to the bar; that after he got the pistol he walked in a stooping position, that he gradually braced up and walked a little better, so it is not founded upon the testimony." "Very well," said the district attorney, "after he got the pistol there was a little swaying, but he quickly gathered himself and walked naturally, without staggering

or swaying, all of his muscles apparently co-ordinating?''
Counsel for appellant again objected ''on the same grounds;
on the further ground that it calls for an opinion on a hypo-
thetical question not warranted by law.'' The objection was
overruled and an exception taken.

There is evidence in the record of all the facts embodied in
the foregoing question, and as the objection went only to
that point the ruling of the court was obviously correct. It
was not necessary for the question to embrace all the evidence
in the case. Indeed, if that were the rule, hypothetical ques-
tions would generally be impossible on account of the conflict
usually created by the testimony.

The rule is clearly stated in *People* v. *Hill,* 116 Cal. 566,
[48 Pac. 711], by Mr. Justice Van Fleet, as follows: ''While
the question should have for its basis some probable, or at
least possible, theory to be deduced from the evidence in the
case, counsel have a right to frame the question to accord
with their theory of what the material facts are as shown by
that evidence, and in so doing may omit facts which from
their point of view have no material bearing upon the sub-
ject.'' Thompson on Trials is therein quoted to the following
effect: ''The hypothetical questions must be based either upon
the hypothesis of the truth of all the evidence, or upon a
hypothesis specially framed of certain facts assumed to be
proved for the purpose of the inquiry. Such questions leave
it for the jury to decide in the first case whether the evi-
dence is true or not, and in the second case whether the
peculiar facts assumed are or are not proved.'' And again:
''It is no objection to a hypothetical question that the state
of facts which it assumes is erroneous, if within the possible
or probable range of the evidence. . . . It is the privilege of
counsel in such cases to assume within the limits of the evi-
dence any statement of facts which he claims the evidence jus-
tifies, and have the opinion of experts upon the facts thus
assumed. The facts are assumed for the purposes of the
question, and for no other purpose.'' Jones on Evidence,
volume 2, section 372, cited by appellant, states the rule also
in line with the other authorities: ''While it is impossible
to lay down any unyielding rule as to the form of the hypo-
thetical question in such cases, it is clear that the question
should be so framed as to fairly and clearly present the state

of *facts* which the counsel *claims to be proved* and which the testimony on his part *tends to prove."*

But appellant contends that facts and not opinions must be assumed in the question (Rogers on Expert Testimony, sec. 30) and that the objection should have been sustained because the words "co-ordinating" and "coherently" presuppose the mental condition which it is the exclusive province of the jury to determine. Granting that these words are objectionable as involving a conclusion, it is difficult to see how their use could have prejudiced appellant. But a complete answer to the contention is that no such objection was made in the court below as is presented here. The additional objection that it was "a hypothetical question not warranted by law" raises no issue and amounts to nothing.

In the case of *People* v. *Mahoney,* 77 Cal. 532, [20 Pac. 73], the district attorney asked one Dr. B. F. Carpenter the question: "From an examination of the wound and the course of the bullet, in your opinion would it have been possible for the deceased to have shot himself?" Defendant objected on the ground that it was "incompetent, no foundation having been laid for it." The district attorney then declared he would lay the foundation and he proceeded to interrogate the witness as to his competency. The hypothetical question was then repeated, and it was objected to by defendant's counsel as "*incompetent and irrelevant, no foundation being laid for the testimony."* The objection was overruled and an exception taken. The answer of the witness to the question was, "No, sir; he did not." The supreme court, in discussing the matter, said: "It appears quite clear, therefore, that the only question upon which the court was asked to pass was, whether the witness had not sufficient experience in such matters to enable him to speak as an expert—to give his opinion—not whether the opinion, if given, was competent evidence. The objection made was not specific, if the point now urged was the one which counsel desired the court to pass upon at the trial." The above question addressed to Dr. Carpenter was of the gravest importance and clearly called for incompetent testimony; and his answer may have caused the conviction of the defendant, and it is apparent that if the proper objection had been made, in case of an adverse ruling below, the defendant would have secured a reversal in the appellate court.

Here it could be demonstrated that the objectionable words —assuming them to be objectionable—could not have prejudiced the defendant. But we uphold the order of the court upon the ground that, in view of the particular objection made, the ruling was undoubtedly sound.

It is urged that the court erred in giving the following instruction: "You are instructed that each and every fact and circumstance relied upon by the prosecution to establish the guilt of the defendant must be proved by the evidence beyond all reasonable doubt, and if the jury are not satisfied beyond all reasonable doubts that each such fact and circumstance has been proven it is your duty to find a verdict of not guilty." The suggestion made in reference to this instruction seems exceedingly hypercritical and destitute of any merit. It would be unreasonable to hold that to the average mind the language used could mean anything more or less than that the burden is upon the prosecution to establish beyond a reasonable doubt the crime charged against the defendant, and that if any fact or circumstance necessary to constitute such crime is not so established the defendant must be acquitted. The only other inference likely to be drawn is that the burden is upon the people to prove all the facts and circumstances which the prosecution has introduced in evidence, whether material or not, to establish the crime. This, it is needless to say, is stating the law more favorably to defendant than he has a right to demand. But if we concede that the instruction, standing apart, might be deemed somewhat obscure, no such imputation can be made when we consider it in connection with the other instructions given by the court wherein the people's duty to prove beyond a reasonable doubt all the elements of the crime charged was clearly set forth.

Appellant also assails the following portion of one of the instructions given: "This presumption of innocence attaches to every stage of the case and to every fact essential to a conviction and remains with the defendant throughout the trial until the contrary is established by proof beyond a reasonable doubt." The contention is made that the presumption of innocence remains with the defendant until a verdict is rendered and not simply "until the contrary is established by proof beyond a reasonable doubt."

In *People* v. *Arlington,* 131 Cal. 235, [63 Pac. 347, 349], a similar instruction was upheld by the supreme court in the following language: ''The court told the jury that 'it is a presumption that abides with him throughout the trial of the case,' and we do not think the language 'until the evidence convinces you to the contrary beyond all reasonable doubt' conveyed the impression that the presumption ceased to operate at the close of the evidence of the prosecution or at any time before the jury had finally determined upon a verdict. The court meant and, we think, must have been by the jury understood to mean that the presumption remained to the last with defendant and until in their deliberations upon the evidence they became convinced of his guilt.'' That decision is controlling here. But, again, appellant cannot complain of the instruction because he requested the court to so instruct the jury, as shown in the transcript, folios 180-182. The court instructed the jury in the identical language requested by appellant. It needs no citation of authorities under such circumstances to show that appellant cannot complain, even granting that the instruction fails to state the law correctly.

The only other point made is that the court erred in refusing to give all of a certain instruction requested by defendant. The part eliminated reads as follows: ''And you are further instructed that the law presumes that if the defendant was an officer and acting as such at the time of the alleged homicide that he was doing his duty.'' Appellant seeks to justify his contention by citing subdivision 15 of section 1963, Code of Civil Procedure, which provides that it is presumed ''that official duty has been regularly performed''; but the proposed instruction goes far beyond the presumption of the regular performance of official duty. It conveys the suggestion that if the defendant was an officer he had a right to kill the deceased. Peace officers are justly invested, under our law, with considerable discretion and power, but it could hardly be contended seriously that a homicide committed by one is presumed to be justifiable simply because of his official position. At best the instruction was obscure and misleading. As far as it inferentially contained a correct legal principle it was covered by instructions given. Besides, it does not appear that it was requested by appellant.

We have examined with anxious care all the suggestions made and authorities cited by counsel, but we find in the record no error whatever. The judgment and order are affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 17, 1907.