### R. M. MORRIS v. THE STATE.

#### No. 1078.    Decided December 20th, 1895.

**1. Negligent Homicide—Acts and Declarations of Defendant—Res Gestæ.**

On a trial for negligent homicide, where it appeared that the killing was occasioned
by deceased's being thrown from a wagon, which defendant ,was driving, the acts
and declarations of defendant, at the place of the homicide and very soon thereafter,
were admissible in evidence as part of the res gestae, and could be looked to as cir-
cumstances characterizing the act of defendant in driving the team.

**2. Same—Charge—Negligence—Degree of Care.**

On a trial for negligent homicide in the first degree, a charge of court which in-
structed the jury, that, "The degree of care and caution required to avoid danger, is
such as a man of ordinary prudence would have used under like circumstances," was
in accordance with the statute and in conformity with the ordinary definition of
negligence.

**3. Same—Allegation and Proof.**

Where the indictment for negligent homicide charged that defendant was so negli-
gent in driving his wagon at a furious speed, as to endanger the life of deceased, who
was riding in the wagon; and that deceased was thrown therefrom and killed. Held:
It was immaterial whether the evidence showed that deceased was thrown from the
wagon without volition on his part, or was thrown in attempting to jump out. In
either event defendant would be liable for such negligent driving.

**4. Improper Argument of Counsel.**

If a defendant apprehends injury from improper argument of the State's counsel,
it is his duty to ask the court to eliminate the same from the consideration of the
jury before he can be heard to complain.

APPEAL from the County Court of Lamar.   Tried below before Hon.
JOHN W. ROUNDTREE, County Judge.

This appeal is from a conviction for negligent homicide in the first
degree, the punishment being assessed at a fine of $75. The charging
part of the indictment is as follows:

"That R. M. Morris, on or about the 21st day of October, A. D. 1893, in Lamar County, Texas, was then and there engaged in the performance of a lawful act, to-wit: was then and there driivng a team hitched to a wagon along a certain highway, to-wit: the Paris and Pattonville public road, situated in Lamar County, Texas, and in driving said team, hitched to said wagon, he, the said R. M. Morris, did then and there drive at a furious rate of speed along said highway, negligently and carelessly, without first looking to see if any person was likely to be injured thereby, and by the said carelessness and negligence of the said R. M. Morris, one J. E. Self was then and there *thrown from said wagon*, so driven by said R. M. Morris, as aforesaid, and the death of the said J. E. Self was then and there caused by the said negligence and carelessness of the said R. M. Morris, the said J. E. Self at the time of said rapid driving of said team, hitched to said wagon, by the said R. M. Morris, being in a position to be thrown out of said wagon, which fact would have been known to the said R. M. Morris, if he had used that degree of care and caution which a man of ordinary prudence would have used under like circumstances, there being then and there an apparent danger of causing the death of the said J. E. Self, and of other persons passing on said highway, by the rapid driving of said team hitched to said wagon as aforesaid."

The facts are stated in the testimony of Charlie Hancock, who testified: "I knew J. E. Self during his lifetime; he is dead now. On the 21st of October, 1893, I was going home from Paris in the wagon of Price Dillard. We overtook R. M. Morris about four miles from Paris. Defendant, R. M. Morris, his two little boys and the deceased, were in defendant's wagon. We overtook them in a lane. Defendant was driving his wagon on one side of the road near the fence, and Price Dillard started to drive his team around defendant's wagon, and defendant immediately commenced whipping his horses with the lines; pulled off his hat and commenced hollering. His horses were going pretty fast. Mr. Dillard asked me to help him hold his team, which I tried to do, but could not stop them. Dillard told defendant several times to stop his team, but don't know whether defendant heard him or not. The teams were going pretty fast. I saw the deceased, J. E. Self, as Dillard's wagon passed defendant's wagon. Self was sitting down in the bottom of the wagon bed. Defendant and his two little boys were on a spring seat or a board across the wagon bed. They stayed on the seat until after the teams were stopped. The teams ran about a half of a mile before they were stopped. When we stopped, I said: 'Mr. Dillard, that man is out of Morris' wagon, and laying up there in the road; and I think he is hurt.' Morris' wagon also stopped close to Dillard's, and he (Morris) came to Dillard's wagon to help Dillard fix his coupling pole. When R. M. Morris came over to Dillard's wagon, he said (referring to Self), that he had jumped out of the wagon. He said, if deceased had no more sense than to jump out of the wagon he (defendant)

would not go back to see about him. I spoke several times about the man being hurt, and finally defendant told his little boys to go back and see what was the matter with deceased. It was 100 yards from where deceased was lying to where the wagons stopped. After the boys went back, we all went. Defendant turned his wagon around and drove it back to where deceased was lying. When we got back, deceased was lying in the road, almost in the center of the wagon tracks of defendant. He, the deceased, was unconscious when we returned, and never spoke. Defendant said, when we arrived at where deceased was lying, that the damned fool had jumped out of the wagon and broke his damned neck. He said, if he had a boy that did not have any more sense than deceased, he would take him out and kill the damned fool. Defendant commenced then to sing 'Old Time Religion.' He was drinking, and said a great many foolish things, that I cannot remember. I don't know how deceased got out of the wagon. When we passed defendant's wagon deceased was sitting down in the wagon bed, and when we stopped I looked back up the road and saw him lying in the road. This all occurred in Lamar County, State of Texas, and on the 21st day of October, 1893."

The following are the special requested instructions asked for defendant and refused: "If you believe from the evidence in this case that the defendant was negligently running his team on a public road as charged in the indictment in this case, yet if you have a reasonable doubt whether or not defendant at the time he was so doing said act was conscious that said act would be likely to endanger the life of deceased or some other person, you should find the defendant not guilty.

"If you believe from the testimony in this case that deceased was not thrown from the wagon by the violent driving of defendant, but that the deceased became frightened and jumped from the wagon, and received the injuries from which he died, you will find the defendant not guilty, notwithstanding you may find that defendant was guilty of negligence in the driving of said wagon.

"If you believe from the evidence that the deceased would not have sustained the fatal injuries but for his own reckless and negligent acts, you will find the defendant not guilty, notwithstanding you may believe beyond a reasonable doubt that the defendant was guilty of negligence in driving his wagon at an unusual rate of speed."

*A. J. Nichols*, for appellant.—In order for the State to secure a conviction in this case, it was compelled to prove that the defendant drove his team in a reckless and negligent manner upon the highway alleged in the indictment; that by so driving his team there was an apparent danger of causing the death of deceased or some other person; that deceased was by such reckless and careless driving of defendant, *thrown from defendant's* wagon, and thereby and in that manner sustained the injuries from which he died.

*Mann Trice*, Assistant Attorney-General, for the State.—Where self-injury is inflicted by one trying to escape the danger incident to a condition produced by the negligence of another, such person cannot be regarded as a free self-determining agent, and the party to whose negligence or misconduct the injury is attributable is responsible for the injury. Whar. on Hom., Sec. 367; Rex v. Williamson, 1 Cox C. C., 97; Whar. on Hom., Sec. 374.

2.   The reckless and negligent manner in which appellant drove his team was unquestionably the cause of the death of the deceased, and if it be true that deceased from fright jumped from the wagon in order to avoid the danger produced by appellant's negligence, appellant would be guilty of negligent homicide.   Whar. on Hom., Sec. 374.

HENDERSON, JUDGE.—The appellant was tried in the court below on an indictment charging him with negligent homicide in the first degree; was convicted, and his punishment assessed at a fine of $75; and from the judgment of the lower court he prosecutes this appeal.   There is nothing in appellant's motion in arrest of judgment.   We think the statutes on the subject sufficiently define "negligent homicide."   Appellant complains of the action of the court in allowing several State's witnesses to testify as to declarations of appellant, made where the body of deceased was found in the road.   It appears that, after the deceased fell or was thrown from the wagon, the appellant drove his wagon a short distance further, and then returned to the place where the deceased was found lying in the road in an unconscious condition, and he there remarked "that the God damn fool jumped out of the wagon, and broke his damn-fool neck.   If I had a boy that had no more sense than the deceased, I would take him out and kill the damn fool."   Appellant was drunk, and commenced to sing, "Old Time Religion."   He said a great many foolish things that the witnesses could not remember.   These expressions were used at the place where the homicide occurred, very shortly afterwards,—could not have been exceeding a few minutes; were a part of the res gestæ, and so admissible in evidence.   Nor do we think the court erred in refusing to give the special charge asked by appellant on this subject.   Said evidence, as adduced, was a part of the case, and was looked to, under the charge of the court, not as indicating any malice on the part of appellant, because this was not a charge of malicious killing, but was looked to simply by them as a circumstance to characterize the act of appellant in driving the team on that occasion as negligent.   There was no error on the part of the court in failing to further define "negligence" than as given in the main charge.   The charge of the court is in the following language: "The degree of care and caution required to avoid danger is such as a man of ordinary prudence would have used under like circumstances."   This was in accordance with the language of the statute on the subject, and is in consonance with the ordinary definition of negligence.   Nor do we think the court erred in refusing to give the charge asked by appellant,

as presented in his bill of exceptions No. 2. We do not believe the facts of this case required the court to give the special charge asked, hinging appellant's guilt on the consciousness on his part that his acts were then endangering the life of deceased. The facts show that the deceased was riding in his wagon, and that he drove his team in a furious and rapid manner. In such condition, he was charged with notice that his acts did endanger the life of the deceased.

Appellant also complains that the court should have given his special charges, Nos. 3 and 4, asked, which presented the issue that deceased jumped from the wagon, instead of being thrown out, as charged in the indictment. The charge contained in the indictment, and which constituted the gravamen of the offense, was that appellant was negligent in driving the wagon, in which deceased was riding, in such a rapid manner along the road as to endanger the life of deceased, who was riding in his wagon at the time, and that deceased was thrown therefrom. No one appears to have seen exactly how deceased got out of the wagon. After he was out some one, either the parties in the same wagon, or in another wagon that was racing with appellant's, noticed it, and, on attention being called to the fact, they went back a short distance and found deceased lying in the road dangerously hurt and in an unconscious condition. The gist of the charge against appellant was rapid and negligent driving. The charge in the indictment is, that he was thrown from the wagon. Evidently he was hurled to the ground with a great deal of force, and whether his being so thrown and hurled from the wagon was without any volition on his part, but simply on account of the speed of the driving, or whether in an attempt to get out of said vehicle, he was violently thrown therefrom, it occurs to us is immaterial. In either event the appellant was liable for his negligence in driving at such a furious rate of speed. Whar. on Hom., Secs. 109, 366, 374. We would further observe, that it is a familiar principle of the law of homicide, that, as to the allegation of the instrument, by which death is inflicted, there is no variance where the proof shows, that another instrument than that alleged was one causing the same character of wound or injury; so that it would appear to be immaterial whether he was thrown from the wagon wholly without any volition on his part, or thrown from it while exercising a volition to get out of the vehicle to save himself on account of the rapid and dangerous speed at which it it was being driven.

As to the remarks of the County Attorney, in his closing argument, if the appellant apprehended any injury therefrom, it was his duty to ask that the court eliminate the same from the consideration of the jury before he can be heard to complain.

The questions in this case, we think, were fairly submitted to the jury, and from the evidence they believed that the appellant was negligent, under the circumstances, in driving his team at a furious rate of speed while the deceased was riding in his wagon, and that such rate of speed created an apparent danger, causing the death of deceased, and

that the same was negligence on his part.   The verdict of the jury is, in our opinion, supported by the evidence in this case, and the judgment should be affirmed.

*Affirmed.*