[Crim. No. 1045.  First Appellate District, Division One.—June 21, 1922.]

## THE PEOPLE, Respondent, v. JOSEPHINE W. ANDERSON, Appellant.

[1] CRIMINAL LAW — MANSLAUGHTER — KILLING OF HUSBAND — EVIDENCE — MATRIMONIAL LETTER CLANDESTINELY RECEIVED. — In a prosecution of a wife for the killing of her husband, it is not error to admit in evidence a letter concerning a matrimonial venture clandestinely received by the defendant at a feigned address and with the knowledge that her husband was jealous of her.

[2] ID.—INSTRUCTIONS—WITHOUT DUE CAUTION AND CIRCUMSPECTION.— In such a prosecution, the court having instructed the jury fully as to the various elements of the crime of manslaughter and in doing so having employed the words "without due caution and circumspection," it is not error to refuse a requested instruction attempting to amplify the meaning of that expression.

[3] ID.—ERRONEOUS DEFINITION.—A requested instruction which attempts to define the expression "without due caution and circumspection" as the equivalent of the words "criminal negligence" and then further defines criminal negligence as a want of the attention that a prudent man ordinarily bestows, is erroneous and is properly refused.

[4] ID.—REASONABLE DOUBT—PRESUMPTION OF INNOCENCE—INSTRUCTIONS.—Where the jury is fully and fairly instructed in general terms on the subject of reasonable doubt and presumption of innocence, it is not error to refuse to give the further instruction that such "presumption continues throughout the trial and accompanies you when in your retirement you consider your verdict and will avail to acquit her unless upon examination of the testimony you are satisfied beyond a reasonable doubt the presumption of her innocence is false," although such instruction correctly states the law and might well be given.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  Michael J. Roche, Judge.  Affirmed.

The facts are stated in the opinion of the court.

2.  General rule as to instructions as to involuntary manslaughter, note, 63 L. R. A. 402.

L. L. Solomons and Fred C. Peterson for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

PREWETT, J., *pro tem.*—The appellant brings this appeal from a judgment of conviction of the crime of manslaughter and from the order of the court denying her motion for a new trial.

The principal point discussed in the brief of appellant is the contention that the trial court erred in receiving in evidence certain written and oral admissions and confessions made by her to the police officers without other and further proof of the *corpus delicti*. This point, however, was abandoned on the oral argument and it will therefore receive no further attention at the hands of the court.

[1] It is insisted that the court erred in admitting in evidence a certain letter addressed to the appellant under her former name of Josephine O'Halloran. The evidence shows that the appellant and her husband—of whose unlawful killing she was convicted—had some differences and quarrels and that he was jealous of her. The letter was dated on March 7, 1921, and long after her marriage to the deceased. The homicide occurred on October 15, 1921. It was written in reply to a letter addressed by the appellant to the writer and in answer to a matrimonial advertisement. The letter is as follows:

"Dear Madam: In reply to your letter will say that I am forty-three years old, five feet ten inches tall, weigh one hundred seventy-five. Pretty good looking, got a business of my own, good big house and some money in bank. Now what I am looking for is some good woman, some one I can depend upon to be good.

"She must be a Catholic and not a divorced woman.

"Now I have a good many letters, but yours is the only one I have ans. so far. So if you care to write again to me. Have you any family. If you could send a picture of yourself I will do the same so we will have some idea about each other. I am a good person to get along with good disposition, hope you are the same. Please write again."

The appellant admitted to the officer that the letter had been addressed to her under her former name and at her former address. She furthermore admitted that her husband had seen the letter, and that it made him "sore." Her explanation to the officers of the incident was that she and some other woman were having some fun answering matrimonial advertisements. The facts that the letter was clandestinely received by a married woman at a feigned address concerning a matrimonial venture and with the knowledge that her husband was jealous of her justified the court in admitting the letter in evidence as tending in greater or less degree to show a motive for the killing. The letter may have suggested why she desired to get her husband out of the way. It was admissible as suggesting a source for the quarrels that admittedly took place between them.

[2] The court instructed the jury quite fully as to the various elements of the crime of manslaughter and in doing so employed the words "without due caution and circumspection." The appellant offered and the court refused to give an instruction attempting to amplify the meaning of the words "due caution and circumspection." The following quotation from the proposed instruction will show its drift and purport:

"Without due caution and circumspection means the same thing as criminal negligence. The word 'negligence' as used in this instruction means a want of such attention to the nature and probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns as in the omission to do something which a reasonable man guided by those circumstances which ordinarily regulate the conduct of human affairs would do, or doing something which a reasonable and prudent man would not do."

Conceding that this proposed instruction is a correct exposition of the law, it adds nothing to the meaning of the words used by the legislature in defining the offense. The average juror is quite as much enlightened by one as by the other. All the words employed in the expression: "due caution and circumspection" are in common and daily use and are understood by the average person. "Caution" means care to avoid accident or misfortune, but the defini-

tion informs us of little more than the meaning accorded to it by mankind in general.

[3] But the instruction is not wholly correct. It attempts to define the words "without due caution and circumspection" as the equivalent of the words "criminal negligence" and then further defines criminal negligence as a want of the attention that a prudent man ordinarily bestows. This is erroneous. Prudence is not always the same as caution. We quote: " 'Cautious' differs in meaning from 'prudent.' It suggests the idea of timidity and Webster gives its secondary meaning as overprudent; fearful; timorous. A man is cautious chiefly as the result of timidity, etc." (*Eggett* v. *Allen,* 106 Wis. 633 [82 N. W. 556]; *McClafferty* v. *Philip,* 151 Pa. St. 86 [24 Atl. 1042].)

Since this cause was submitted, the supreme court has had occasion to consider the meaning of the phrase in question. The district court of appeal used the following language: "If one performs an act in a manner not forbidden by statute but in a wanton, reckless and culpable manner, and thereby kills another, he may be convicted under the definition of manslaughter as secondly described." (*People* v. *Seiler,* 57 Cal. App. 195 [207 Pac. 396].)

And the supreme court, in commenting upon this instruction and rejecting it as inaccurate, says: "The statute (Pen. C. Sec. 192, Sub. 2) defines involuntary manslaughter of this specified character as the unlawful killing of a human being, involuntarily, but 'in the commission of a lawful act which might produce death . . . without due caution and circumspection.' In order to constitute this kind of manslaughter the act may be lawful but it must be one which might produce death, and which does produce death, and it must be committed without due caution and circumspection. The lack of due caution and circumspection need not go to the extent of being wanton or reckless, although it might possibly be such as would be defined as culpable. . . . (*People* v. *Seiler,* 57 Cal. App. 195 [207 Pac. 399].)

The code (Pen. Code, sec. 192) provision upon which the instruction is based reads as follows: "Sec. 192. Manslaughter is the unlawful killing of a human being, without malice . . . involuntary . . . in the commission of a lawful act which might produce death . . . without due caution and circumspection."

It is a familiar rule that once the court has fully and fairly stated the law upon a given point, it is not error for the court to refuse to amplify thereon. (*People* v. *Quon Foo,* 57 Cal. App. 237 [206 Pac. 1028].)

Ordinarily, the language employed by the legislature in defining a crime is deemed to be best suited to that purpose, and error cannot be predicated upon its use in informations and instructions. An information must set forth the charge "in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." (Pen. Code, sec. 950.) And it is usually sufficient if it follows the language employed by the legislature. (*People* v. *Martin,* 32 Cal. 91; *People* v. *Ward,* 110 Cal. 369 [42 Pac. 894]; *People* v. *Carpenter,* 136 Cal. 391 [68 Pac. 1027], and many other California cases.) The instruction of which appellant complains as being inadequate is given in the very words of the statute. "Negligence," when so great as to be criminal in character, is stated in the proposed instruction as being the equivalent of want of "due caution and circumspection." "Negligence" is a word that has acquired a highly specialized meaning and whole volumes have been written upon it; but the words "due caution and circumspection" as used by the trial court have their common and ordinary meaning and no other. When these words are stated to the jury they import to them this common meaning without further amplification. The supreme court in a recent case says: "From this it is argued that the instruction must be condemned as erroneous. But the legislature has the power to declare what the law shall be on the subject. It has done so by this section. . . . However this may be, it cannot be disputed that error cannot be predicated upon an instruction which states the law as the legislature has fixed it by statute and which is applicable to the case" (*People* v. *Fowler,* 178 Cal. 657, quoting from page 671 [174 Pac. 892, 897]).

But an attempt to expand upon and define "due caution and circumspection" would, if successful, be no more when given than a mere "commonplace"; and it is well settled that giving or refusing a mere "commonplace" does not constitute reversible error. (*People* v. *Raber,* 168 Cal. 316 [143 Pac. 317].)

The evidence showing the circumstances of the killing is shown only by the testimony of the appellant herself, there being no other evidence on the point. It is not at all clear that her version of the matter would demand any instruction at all concerning "due caution and circumspection."

But at most, the refusal of the instruction, even conceding it to be correct, is not, in a clear case like the present, of sufficient importance to justify a reversal. The evidence abundantly warrants the verdict and there is no reason to believe that a different result would have ensued had the proposed instruction been given.

[4] It is strenuously insisted that the court erred in refusing a proffered instruction on the presumption of innocence. The court, after fully and fairly instructing the jury in general terms on this subject, refused to give a further instruction to the effect that this "presumption continues throughout the trial and accompanies you when in your retirement you consider your verdict and will avail to acquit her unless upon examination of the testimony you are satisfied beyond a reasonable doubt the presumption of her innocence is false."

This instruction correctly states the law and it might well have been given, but this is far from saying that the refusal to give it constitutes reversible error. The jurors, of course, did not know the purport of the instruction nor that the court had declined to give it. There arises no inference, therefore, that the jurors understood it to be an incorrect statement of the law. It remains only to inquire whether or not they were correctly and sufficiently instructed upon this point. It cannot be contended that a defendant on trial is entitled to an instruction in any set form of words. Instructions intended simply to emphasize propositions which are covered by the court in its charge to the jury are properly refused. (*People* v. *Morrell,* 28 Cal. App. 729 [153 Pac. 977]; *People* v. *Wilson,* 29 Cal. App. 563 [156 Pac. 377].)

It may be stated as a general rule that any form of instruction which fully and fairly presents the point at issue meets the requirements of the statute. The refused instruction may be summarized as stating that the presumption of innocence continues with the jury until they

agree upon a verdict. It is quite clear that the court gave
this instruction in substance in its general charge. Among
other charges, the court gave the following to the jury:
"I instruct you that the law raises no presumption what-
ever against the defendant, but, on the contrary, every
presumption of the law is in favor of her innocence, and
in order to convict her of the crime alleged or of any
lesser crime which may be included in it, every material
fact necessary to constitute such crime must be proved
beyond a reasonable doubt; and if you entertain any rea-
sonable doubt upon any single fact or element necessary
to constitute the crime, it is your duty to give the defend-
ant the benefit of such doubt and acquit her."

Manifestly, this instruction advises the jury that they
must acquit the appellant if, at the moment of arriving
at their verdict, they entertain any reasonable doubt of her
guilt. The condition of mind of the juror bears a close and
necessary relation to the moment of time when such con-
dition ripens into a verdict. Any other reading of the
instruction would be absurd. Again: "The fact that the
defendant has been arrested and charged with the offense
and that an information has been filed against her creates no
presumption whatever of her guilt. It is incumbent upon
the prosecution not only to overcome the presumption of
the defendant's innocence, but also, the defendant's guilt
must be established by evidence sufficiently conclusive to
exclude any reasonable supposition of her innocence. The
testimony must establish affirmatively her guilt to a moral
certainty and beyond a reasonable doubt; and unless the
evidence introduced in the case is such that it proves
to your entire satisfaction and beyond a reasonable doubt
that the defendant is guilty, she is entitled to an acquittal
at your hands." And "These two propositions must be
established by the prosecution to a moral certainty and
beyond a reasonable doubt." And further: "In every
criminal proceeding under our system of jurisprudence
the defendant is presumed to be innocent until the contrary
is proved and in case of a reasonable doubt whether his
guilt is satisfactorily shown he is entitled to an acquittal.
Reasonable doubt is that state of the case which after an
entire comparison and consideration of all the evidence
leaves your minds in that condition that you cannot say

you feel an abiding conviction to a moral certainty of the truth of the charge." And: "If upon a review and consideration of all the evidence before you, you should be satisfied beyond a reasonable doubt that the defendant here is guilty, you may under the information return either of the following verdicts," etc.

In several other places in the charge the court admonished the jury as to reasonable doubt and moral certainty.

There is, of course, no question that the presumption of innocence remains with the party on trial until a verdict of guilty is reached. (*People* v. *McNamara,* 94 Cal. 509 [29 Pac. 953].) If it ceased prior to that moment it would be of no value to a defendant and would be no more than a mockery and a sham.

When a jury is once told in general terms that it must not convict a defendant unless satisfied beyond a reasonable doubt of his guilt, it is unnecessary to go into detail to say to the jury that this principle applies during the deliberations of the jury, for by its very terms it implies as much. No case has been called to our attention that is in conflict with the conclusions at which we have arrived. The cases of *People* v. *Arlington,* 131 Cal. 231 [63 Pac. 347], and *People* v. *James,* 5 Cal. App. 427 [90 Pac. 561], cited by appellant, are really adverse to her contentions. In each of those cases it was shown that other instructions, having the same general meaning, relieved the case from error.

We find no error in the record. The appellant was fairly tried and properly convicted. This is a proper case for the application of section 4½ of article VI of the constitution.

Accordingly, the judgment and order denying appellant's motion for a new trial are affirmed.

Tyler, P. J., and Richards, J., concurred.