[Crim. No. 2641. In Bank.—May 2, 1924.]

## THE PEOPLE, Respondent, v. HERMAN WILSON, Appellant.

[1] CRIMINAL LAW—MANSLAUGHTER—MISDEMEANOR CHARGE—PLEA OF ONCE IN JEOPARDY—REJECTION OF EVIDENCE OF—INSTRUCTION.— In a prosecution for manslaughter which consisted in the killing of a person through the striking of such person by defendant's automobile, the deceased having died after a partial hearing of a misdemeanor charge against defendant under section 20 of the Motor Vehicle Act, it was not error for the trial court to strike out the defendant's offered evidence, in support of his plea of once in jeopardy, of the proceedings upon the misdemeanor charge, or to direct the jury to find against the defendant upon such plea.

[2] ID.—PLEA OF ONCE IN JEOPARDY—WHEN INVOCABLE.—In order that a plea of once in jeopardy may be available to a defendant the second prosecution must be for the same offense, both in law and fact, as that for which the first prosecution was instituted.

[3] ID. — ASSAULT — SUBSEQUENT DEATH — PROSECUTIONS — ONCE IN JEOPARDY.—The plea of once in jeopardy is not available to a defendant where the latter has committed an act of violence which in its immediate result amounts to a misdemeanor, but which in its after consequences upon the victim of the violent act becomes, through the death of that victim, murder or manslaughter. In such an event the second prosecution is not for the same offense as the first; and the reason for this is, "that as at the time of conviction of assault there could have been no conviction of the homicide the prosecution of the homicide is not barred by the conviction of the assault."

[4] ID.—DECEASED STRUCK BY AUTOMOBILE—MANSLAUGHTER.—In a prosecution for manslaughter, the death of the deceased having been caused by the fact that she was struck by the defendant's automobile while it was being driven by himself along one of the much-traveled public streets of a city upon which the decedent was rightfully standing or walking at the time of the collision, under the general charge of manslaughter embraced in the in-

4. Homicide by negligent operation of an automobile, notes, Ann. Cas. 1918E, 1146; 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; L. R. A. 1918B, 954.

Manslaughter or assault in connection with use of automobile for unlawful purpose or in violation of law, notes, Ann. Cas. 1918E, 1146; 16 A. L. R. 914; 21 A. L. R. 1504.

formation based upon subdivision 2 of section 192 of the Penal Code, defining involuntary manslaughter as the unlawful killing of a human being without malice "in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection," the defendant was subject to conviction under either of the two clauses contained in said definition of the crime of involuntary manslaughter.

[5] ID.—DANGEROUS INSTRUMENTALITY—ABSENCE OF PROPER PRECAUTIONS—NEGLIGENCE—MANSLAUGHTER.—When a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom, his act or neglect is a criminal act against the person so killed, even though his negligence does not amount to a wanton or reckless disregard of human safety or life.

[6] ID.—VERDICT—EVIDENCE.—In such prosecution, the evidence was sufficient to justify the verdict of the jury finding the defendant guilty of manslaughter.

[7] ID.—INSTRUCTIONS—OMISSION OF WORD—PATENT INACCURACY—ABSENCE OF PREJUDICE.—In such prosecution, where the defendant proposed an instruction, the closing portion of which read, the jury "must exclude to a moral certainty and beyond all reasonable doubt every other hypothesis but the single one of guilt, or the jury must find the defendant not guilty," and the trial court gave the instruction in the identical form in which it was requested except that, as appears from the clerk's transcript, the word "not" just before the final word "guilty" was omitted, it would seem that the omission of the word "not" was a patent inaccuracy, more probable to have occurred in the transcription than in the instruction as actually and orally given to the jury, and in view of the fact that there were other correct instructions touching the matter of the degree to which the jury must be satisfied as to the defendant's guilt before they could find him guilty, it cannot be said that the jury was misled by the patent inaccuracy in the instruction.

[8] ID.—INSTRUCTION ON MURDER—LIMITATION UPON—ABSENCE OF PREJUDICE.—In such prosecution, the rights of the defendant were not in anywise prejudiced by the giving of an instruction on the subject of murder, where the trial court expressly stated to the jury that "the giving of the instruction on murder is for no other purpose than that you may understand hereafter the instructions that will be given upon manslaughter and that you may see the distinctive features between the two offenses."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Carl Westerfeld and Robert D. Duke for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This appeal is from a judgment of conviction of the defendant upon a charge of manslaughter which consisted in the killing of one Agnes Johnson on Van Ness Avenue, near its intersection with Sutter Street, in the city and county of San Francisco, shortly after midnight on the morning of October 21, 1922, through the striking of the deceased by the defendant's automobile while it was being driven by him along said avenue. Upon his trial for the alleged crime the defendant, in addition to his plea of not guilty, pleaded that he had been once in jeopardy; and in support of said plea offered in evidence a misdemeanor complaint charging a violation of section 20 of the Motor Vehicle Act (Stats. 1915, p. 406, as amended by Stats. 1917, p. 400), filed on the morning of October 21, 1922, shortly after the collision and while the victim thereof was still alive. He also offered evidence showing that he was brought to trial upon said charge; that witnesses in support thereof were sworn and testified, and that the cause was continued until January 26, 1923, for the taking of further testimony. In the meantime the said Agnes Johnson died, whereupon the defendant was charged with the crime of manslaughter and held to answer upon said charge, and the misdemeanor charge was, on February 13, 1923, dismissed. The defendant's offered evidence of the aforesaid proceedings upon the misdemeanor charge in support of his plea of once in jeopardy was, upon motion of the district attorney, stricken out and the trial court advised the jury that it should upon the defendant's plea of ''once in jeopardy''. return a verdict for the people. The jury obeyed this instruction and in addition thereto returned a verdict finding the defendant guilty of manslaughter.

[1]   His first contention upon this appeal is that the trial court was in error in striking out his offered evidence in support of his plea of "once in jeopardy," and in its direction to the jury to return a verdict against him upon his said plea.   There is no merit in this contention.   [2]   In order that a plea of once in jeopardy may be available to a defendant the second prosecution must be for the same offense, both in law and fact, as that for which the first prosecution was instituted.   (7 Cal. Jur. 955, and cases cited.)   [3]   The law upon this subject is well settled in its application to cases where the defendant has committed an act of violence which in its immediate result amounts to a misdemeanor, but which in its after consequences upon the victim of the violent act becomes, through the death of that victim, murder or manslaughter.   In such an event the second prosecution is not for the same offense as the first; and the reason for this is, as is well stated in Wharton on Criminal Pleading and Practice, ninth edition, section 476, "that as at the time of conviction of assault there could have been no conviction of the homicide the prosecution of the homicide is not barred by the conviction of the assault."   (See, also, 1 Bishop on New Criminal Law, sec. 1059, and cases cited.)   In the case of *People* v. *Defoor,* 100 Cal. 150 [34 Pac. 642], this court, while upholding the plea of once in jeopardy under the facts of that case, which did not involve the death of the injured person, nevertheless recognized the foregoing rule as applicable to cases of homicide, notwithstanding a previous trial and conviction of the defendant for the assault which subsequently resulted in the death of the injured person.   In none of the cases cited by the appellant in support of his contention as to his plea of "once in jeopardy" does the element of death, which is the essential basis of the charge of manslaughter, appear to be present; nor upon principle do we think a case can be conceived wherein a charge of murder or manslaughter could be defeated by a plea of once in jeopardy based upon a mere misdemeanor charge, trial, or conviction of the assault or offense which had later resulted in the death of the injured victim.   It was therefore not error in the trial court to strike out the defendant's offered evidence in that regard or to direct the jury to find against the defendant upon his aforesaid plea.

The next contention of the defendant is that the evidence was insufficient to justify the conviction of the defendant upon the charge of manslaughter. The particular portion of section 192 of the Penal Code upon which this prosecution is predicated is that embraced in subdivision 2 of said section, in which involuntary manslaughter is defined as the unlawful killing of a human being without malice "in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection." It is an admitted fact in this case that the death of the decedent Agnes Johnson was caused by the fact that she was struck by the defendant's automobile while it was being driven by himself along one of the much traveled public streets of San Francisco, upon which the decedent was rightfully standing or walking at the time of the collision, which resulted in her death. [4] Under the general charge of manslaughter embraced in the information the defendant was subject to conviction under either of the two clauses contained in the foregoing definition of the crime of involuntary manslaughter, that is to say, he might have been convicted of the offense of involuntary manslaughter arising out of the commission of an unlawful act not amounting to a felony; as, for example, through the violation of the provisions of section 22 of the Motor Vehicle Act, which reads, in part, as follows: "Any person operating or driving a motor or other vehicle on the public highways shall operate or drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the highway, and no person shall operate or drive a motor vehicle or other vehicle on a public highway at such a rate of speed as to endanger the life or limb of any person or the safety of any property."

Under section 30 of said Motor Vehicle Act any person violating its provisions is guilty of a misdemeanor. If, therefore, upon the evidence in this case the jury would have been justified in finding that immediately prior to and at the time of the collision which proximately caused the injury to and subsequent death of the decedent the defendant herein was not operating or driving his motor vehicle upon and along said Van Ness Avenue in a careful

and prudent manner or that he was operating or driving his said automobile thereon at a rate of speed greater than was reasonable and proper, having regard for the traffic and use of that particular highway, and so as to endanger the life or limb of any person, and if the jury would have been further justified by the evidence in finding that the injury to the decedent with her consequent death was proximately due to the defendant's violation of the Motor Vehicle Act in any of the foregoing regards, they could properly have found the defendant guilty of involuntary manslaughter arising out of the commission of an unlawful act not amounting to a felony. Or on the other hand, if the jury, regardless of any alleged or proven violation on the part of the defendant of the foregoing provisions of the Motor Vehicle Act, had been justified by the evidence in finding that the defendant in the operation and driving of his motor vehicle at said time and place was not violating any provision of the Motor Vehicle Act or committing any other unlawful act not amounting to a felony, but that in the operation and driving of his motor vehicle at said time and place lawfully he was acting without due caution and circumspection and that the injury to and death of the decedent was produced thereby, they might still find the defendant guilty of manslaughter under the concluding clause of subdivision 2 of said section 192 of the Penal Code.

The question as to what want of due caution and circumspection amounts to criminal negligence has been variously decided by the courts of this as well as other jurisdictions. In the case of *People* v. *Seiler* the district court of appeal for the first district, second division, said: ''If one performs an act in a manner not forbidden by statute but in a wanton, reckless or culpable manner and thereby kills another he may be convicted under the definition of manslaughter as secondly defined''; and in a further effort to define criminal negligence that court, in the same case, said that ''criminal negligence consists in the commission of a lawful act, but in a culpable, reckless manner.'' (*People* v. *Seiler*, 57 Cal. App. 195 [207 Pac. 396].) In denying the petition for rehearing in said cause this court undertook to limit the scope of the definition of criminal negligence as above given and in so doing said: ''The statute (Pen.

Code, sec. 192, subd. 2) defines involuntary manslaughter of this specific character as the unlawful killing of a human being, involuntarily, but 'in the commission of a lawful act which might produce death . . . without due caution and circumspection.' In order to constitute this kind of manslaughter the act may be lawful, but it must be one which might produce death, and which does produce death, and it must be committed without due caution and circumspection. The lack of due caution and circumspection need not go to the extent of being wanton or reckless, although it might possibly be such as would be defined as culpable. But the word 'culpable' is not an apt description of the idea intended to be conveyed by the words 'due caution and circumspection.' On this subject see note II to the case of *Johnson* v. *State* (1902), 61 L. R. A. 277.''

[5] The proper rule deducible from the cases cited in the note above referred to would seem to be this, that when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom, his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life. (*Johnson* v. *State, supra,* and notes; *Reg.* v. *Doherty,* 16 Cox Crim. Law Cas. 306; *Morris* v. *State,* 35 Tex. Cr. 313 [33 S. W. 539].)

It is the contention of the appellant that the evidence in this case is insufficient to bring the defendant within the rule above stated. This contention requires a brief review of the evidence in the case. The defendant was by occupation a mariner, a deck officer on steamer and ocean ships. When ashore he lived with Captain Christensen and his family at 1477 Jackson Street, in the city of San Francisco. He was the owner of an automobile, which he had been driving for about three months and prior to that time had owned or driven another machine for about six months. On the evening of October 20, 1922, several relatives of Captain Christensen had a social gathering at his home which the defendant with the others attended. When the party broke up near midnight the defendant

proceeded to take a young lady, a niece of Mrs. Christensen, to her home in his automobile and they proceeded to drive down Jackson Street to Van Ness Avenue and thence southerly toward Market Street. The accident in question occurred at a point on the westerly side of Van Ness Avenue about forty feet northerly from its intersection with the northerly line of Sutter Street. A double track municipal street-car line occupies the center of Van Ness Avenue and cars pass and repass frequently thereon, those going southerly stopping to take on or discharge passengers just before reaching the intersection at Sutter Street and at such distance therefrom that the rear end of the south-bound car would be at about the point on the avenue where the accident in question occurred. There is no designated safety station at this point, but persons about to take such cars are accustomed to stand in the open street near said track and at or near said point of stoppage. There is also a double track line of cars on Sutter Street upon which cars ran frequently up to and for some time after midnight. There were a number of persons standing or walking at or near the intersection of these two streets just before and at the time the accident occurred and who observed it and testified as to the defendant's approach to the scene. It must be conceded that the larger number of these witnesses testified that the defendant as he approached the point of the accident was traveling along the westerly side of Van Ness Avenue at a speed variously estimated at from fifteen to twenty-five miles an hour. There was one witness however, who testified that the speed with which the defendant's car approached the point of the accident was about thirty-five miles an hour and that as he came within the witness' vision he veered his machine toward the car tracks and drove close to the west track up to the point of impact. This witness testified to certain other matters as to which there is a very radical difference between his testimony and that of most or all of the other witnesses and which casts a degree of doubt or incredibility upon his entire testimony, but in certain quite material respects he is supported by other witnesses in the case, and even by the testimony of the defendant himself; as, for example, several witnesses testified that the defendant was driving his car quite close to the westerly car track as he approached the scene and

at such a distance therefrom as to be likely to strike a person standing in the street awaiting the approaching street-car. The defendant himself admitted that at other intersections of cross-streets with the avenue on which street-cars ran he had turned his machine on to the car tracks to avoid the bumps in crossing. There is no evidence showing that the defendant veered his car away from the tracks or slackened his speed as he approached this particular intersection or that he took any other precautions, either to give warning of his approach or to avoid the possibility of impact with persons who might be standing at the accustomed place on the street awaiting the opportunity to board the approaching street-car. That such street-car was approaching that intersection, coming southerly on the avenue, and but a short distance behind the defendant's machine at the moment of his impact with the decedent, is testified to by several witnesses, including the conductor upon said street-car; while the defendant, who was a witness in his own behalf, nowhere denied knowledge of the proximity of such approaching street-car.. The evidence discloses without material conflict that the lights of the defendant's car were lit, and while it is in evidence that the night was dark, the fact, as testified to by the defendant, that he did not see the deceased woman until the instant before the impact may well have been taken by the jury as some evidence at least of a want of circumspection on the defendant's part in approaching a spot where persons were wont to be and were entitled to be and might reasonably be expected to be when a street-car was making its approach. The defendant, in offering an explanation of the accident, testified that the woman suddenly stepped in front of his car too late for him to avoid striking her, but as to this he is not very strongly supported by the other witnesses, and the jury may well have declined to accept this explanation, particularly in view of the fact that the stricken woman in her dying declaration stated that she was standing beside the car tracks and as close to the track as she could so as to give automobiles as much chance to pass as possible, and that she had observed the lights of the approaching machine while it was some distance away, and that it came right at her, and that she would not have been struck if it had turned to the right. [6] We think the foregoing evidence

was sufficient to justify the verdict of the jury finding the defendant guilty of manslaughter.

[7] The appellant also complains of certain instructions which are claimed to be erroneous. One of these was the defendant's own proposed instruction which, as proposed, read: "The court instructs you that it is not sufficient that the facts coincide with, account for, and therefore render probable the hypothesis of guilt asserted by the prosecution. But they must exclude to a moral certainty and beyond all reasonable doubt every other hypothesis but the single one of guilt, or the jury must find the defendant *not* guilty."

The court gave this instruction in the identical form in which it was requested except that, as appears from the clerk's transcript, the word "not" just before the final word "guilty" was omitted. The appellant rightly states that the instruction as it thus appears to have been given is "obviously erroneous"; but is so obviously erroneous, considering the whole context of the instruction, that it seems almost inconceivable, either that it should have been given in the form in which it appears or that it should have been taken by the jury in the introverted sense which the omission of the word "not" gives to it. It would seem to have been a patent inaccuracy, more probable to have occurred in transcription than in the instruction as actually and orally given to the jury. Besides, there were other correct instructions touching the matter of the degree to which the jury must be satisfied as to the defendant's guilt before they could find him guilty; and this being so we cannot conceive that the jury was misled by the patent inaccuracy in this instruction.

[8] The defendant also insists that the instruction upon the subject of murder should not have been given and cites some cases upon the error of giving inapplicable instructions. In the instant case, however, the trial court in quoting the provisions of the Penal Code treating of the subject of homicide expressly stated to the jury that "the giving of the instruction on murder is for no other purpose than that you may understand hereafter the instructions that will be given upon manslaughter and that you may see the distinctive features between the two offenses." Under such a limitation as to the purpose of the instructions on murder

we cannot conclude that the rights of the defendant were in anywise prejudiced thereby.

No other errors being urged, the judgment is affirmed.

Waste, J., Lennon, J., Lawlor, J., Myers, C. J., and Seawell, J., concurred.