[Crim. No. 4241. In Bank.—November 30, 1939.]

THE PEOPLE, Respondent, v. ALEXANDER A. POCI-ASK, Appellant.

Thornwell Rogers and S. Ward Sullivan for Appellant.

Earl Warren, Attorney-General, Burdette J. Daniels, Deputy Attorney-General, Buron Fitts, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

SHENK, Acting C. J.—The defendant was convicted of negligent homicide, a felony, as provided in section 500 of the Vehicle Code. He has appealed from the judgment and from the order denying his motion for a new trial.

Between 8 and 9 o'clock on the evening of September 8, 1938, the defendant, in the company of three other persons, was driving a Ford automobile along Colorado Place toward its intersection with Colorado Boulevard in Los Angeles County. It was a clear, moonlight night. The lights on the defendant's automobile were burning brightly. There was no traffic coming toward the defendant. Suddenly an object appeared in front of him at a distance of about 80 to 100 feet. He attempted to swerve the car to the right. He felt an impact and heard a scream. The car crossed a wooden curb, hit a post, and came back to the highway. Skidmarks showed that it was stopped 115 feet from the point of impact. The car struck Gladys Schmidt and John Robert Allen, both of whom died as a result of injuries thus sustained. The decedents were on bicycles, traveling along the right-hand side of the highway, in a party with three others who were ahead of them. The bicycles carried no reflectors. A reflector was

fastened on a clip attached to a strap around Allen's leg. The defendant's speed at the time was estimated at thirty or thirty-five miles an hour. Earlier in the day the defendant drank a can of ale. He purchased about a dozen cans of ale and a bottle of sloe gin which were taken by his party to a barbecue, but there is evidence that the defendant did not drink at the barbecue. However, the odor of liquor was noticeable on his breath at the police station after the accident, although he did not appear to be intoxicated. The defendant was driving without an operator's license. He had recently theretofore been refused a license because of his failure to pass the eye test. There was some evidence that the brakes on the defendant's car were not in good condition.

Section 500 of the Vehicle Code, added in 1935 (Stats. 1935, p. 2141), provides as follows: "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle in a negligent manner or in the commission of an unlawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the state prison for not more than three years."

The district attorney waived any charges of violation of other provisions of the Vehicle Code and submitted the People's case on the theory that the defendant was guilty of negligent homicide pursuant to said section 500, committed in the doing of a lawful act, that is, while driving an automobile, in a negligent manner. Pursuant to such waiver the court instructed the jury generally that a verdict of guilty on a charge of negligent homicide, that is, while driving an automobile in a negligent manner, may be returned if the jury should find that the defendant was guilty of negligence resulting from a failure to exercise ordinary care under all of the facts and circumstances. The court also instructed the jury that although the district attorney waived any prosecution except on the theory of driving in a negligent manner, nevertheless, all acts of the defendant which might otherwise have constituted unlawful acts might be taken into consideration for the purpose of determining whether the conduct of the defendant was negligent. In other words the court properly guarded against a misapprehension on the part of the

jury that any such unlawful acts on the part of the defendant were to be entirely excluded from its consideration.

The defendant assigns prejudicial error in the refusal of the court to give requested instructions to the effect that the negligence which must be found before guilt attaches under said section 500 of the Vehicle Code is such negligence as would amount to a flagrant and reckless disregard of the safety of others and a wilful indifference to possible injuries, or consist of the doing of a lawful act in a culpably reckless manner.

The basis of the defendant's request is asserted to be in the provision of section 20 of the Penal Code, as follows: "In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence." The defendant relies on *People* v. *Hurley,* 13 Cal. App. (2d) 208 [56 Pac. (2d) 978]; *People* v. *Driggs,* 111 Cal. App. 42 [295 Pac. 51], and on decisions from other jurisdictions which define "criminal negligence" in accord with his contentions.

The Driggs case, decided in 1931, involved a charge of assault with intent to commit murder. The facts showed that the defendant, a special police office guarding a freight train, attempted to frighten away a group of men by firing over their heads. In doing so, a bullet struck and injured another man, a distance of 1200 feet away, whose presence was not noticed by the defendant. In instructing the jury on the question of what constituted criminal negligence the court read section 7 of the Penal Code, which provides in subdivision 2: "The words 'neglect', 'negligence', 'negligent' and 'negligently' import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." The District Court of Appeal held that, although found in the Penal Code, the definition was only of an act which fixed civil liability; that "in order to constitute criminal negligence, there must enter into the act some measure of wantonness or flagrant or reckless disregard of the safety of others, or wilful indifference. If no one of these elements enter into the act, the person charged cannot be held guilty of criminal negligence." The court cited as its authority the cases noted in volume 2, page 1750, Words and Phrases, first series, and 1 Words and Phrases, second series, page 1153. In the Hurley

case, decided in 1936, the defendant while driving a Cord sedan at night collided with and killed a pedestrian who was walking in the same direction on the right-hand side. of the road. A question before the District Court of Appeal was whether the evidence supported a conviction on the charge of involuntary manslaughter. The court considered the provisions of section 192 of the Penal Code defining involuntary manslaughter as the unlawful killing of a human being without malice ''in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection''. The court held that lack of due caution and circumspection must be construed as the equivalent of criminal negligence. Although it cited prior decisions of this court on the subject of what is a lack of due caution and circumspection in cases of involuntary manslaughter, it followed the definition of criminal negligence announced in the case of *People* v. *Driggs, supra,* and concluded as a matter of law that the defendant was guilty only of a want of ordinary care which, relying on the Driggs case, it held was insufficient to constitute criminal negligence.

The defendant herein urges that the words ''driving in a negligent manner'', as those words are used in the pertinent section of the Vehicle Code, read in conjunction with section 20 of the Penal Code, mean criminal negligence as defined in the Driggs and Hurley cases, *supra.* Such, however, is not the law of this state. True, in every crime there must exist the union of act and intent or criminal negligence. But, in answering the question of what constitutes criminal negligence, the court is bound to apply an appropriate definition enacted by the legislature. Only when the legislature has not properly defined a term is it necessary for the courts to look to the meaning thereof as understood in the common law. (8 R. C. L., p. 60.) Section 500 of the Vehicle Code makes criminal, that is, punishable (vol. 2, Words and Phrases, p. 1741), the negligent driving of a motor vehicle which causes injuries to another proximately resulting in death within the time specified in the section. This court has consistently refused to add to the words of pertinent statutes any formulae clearly not included within the plain language thereof. At least as early as *People* v. *Pearne,* 118 Cal. 154 [50 Pac. 376], a case of involuntary manslaughter

resulting from negligently driving a team of horses, the court held that on the facts the charge to the jury "should rest upon the commission of an act done without due caution and circumspection", employing the language of section 192 of the Penal Code. In denying a hearing in this court after decision by the District Court of Appeal in *People* v. *Seiler*, 57 Cal. App. 195 [207 Pac. 396] (conviction of manslaughter growing out of the negligent driving of an automobile), this court expressly disapproved the use of the words "wanton" and "reckless", and indicated the inaptitude of the word "culpable", in describing the idea to be conveyed by the phrase, "without due caution and circumspection" used in the statute.

In the case of *People* v. *Wilson*, 193 Cal. 512 [226 Pac. 5], the charge of manslaughter also arose out of the negligent driving of an automobile. This court discussed the question of what want of due caution and circumspection is required to constitute criminal negligence. After noting the remarks of this court on denying the petition for hearing in the Seiler case, *supra*, it was said: "The proper rule deducible from the cases cited in the note above referred to (note following report of *Johnson* v. *State*, 66 Ohio St. 59 [63 N. E. 607, 90 Am. St. Rep. 564], in 61 L. R. A. 277), would seem to be this: That when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life. (*Johnson* v. *State, supra,* and notes; *Reg.* v. *Doherty*, 16 Cox's Crim. Law Cases, 306; *Morris* v. *State*, 36 Tex. Cr. R. 313 [33 S. W. 539].)" The foregoing pronouncement has been applied in the following cases: *People* v. *Anderson*, 58 Cal. App. 267 [208 Pac. 324]; *People* v. *Thomas*, 58 Cal. App. 308 [208 Pac. 343]; *People* v. *Crossan*, 87 Cal. App. 5 [261 Pac. 531]; *People* v. *Marconi*, 118 Cal. App. 683 [5 Pac. (2d) 974]; *People* v. *Frantz*, 138 Cal. App. 499 [32 Pac. (2d) 670]. Anything in the Driggs and Hurley cases inconsistent therewith must be deemed to be disapproved.

Decisions in other jurisdictions relied upon by the defendant, such as *People* v. *Angelo,* 246 N. Y. 451 [159 N. E. 394] ; *Cain* v. *State,* 55 Ga. App. 376 [190 S. E. 371] ; *State* v. *Patterson,* (Ida.) 88 Pac. (2d) 493; *French* v. *State,* 235 Ala. 570 [180 So. 592], either involve dissimilar statutory provisions or apply the rule relied upon by the defendant as the common-law rule applicable in the absence of statutory definition. For instance, in the case of *State* v. *Patterson, supra,* the defendant was charged with assault with a deadly weapon. A statute in Idaho contains the same requirement as our Penal Code, section 20. The question involved was: What constituted criminal negligence in such a case? (See, also, *People* v. *Vasquez,* 85 Cal. App. 575 [259 Pac. 1005].) It may also be noted that a statute of Idaho defines involuntary manslaughter in substantially the same language as section 192 of our Penal Code, and which, in cases of manslaughter occurring while driving an automobile in a lawful manner but "without due caution and circumspection", has received an application similar to the approved cases in this state hereinabove cited. (*State* v. *Brooks,* 49 Ida. 404 [288 Pac. 894].) In that case the court said: "The Legislature has the power to declare what the law shall be on the subject, and, its definition of the offense of involuntary manslaughter having been stated to the jury, in effect, the law upon that point was sufficiently covered, and it was not error for the court to refuse to amplify thereon," citing, among other cases, *People* v. *Fowler,* 178 Cal. 657 [174 Pac. 892], and *People* v. *Seiler, supra.*

Exhaustive research has been made into the question of what constitutes criminal negligence under the common law and as applied under statutes in other jurisdictions. (See *People* v. *Angelo, supra;* note to *Johnson* v. *State, supra;* appendix to article, "Negligent Homicide", 25 Calif. Law Rev. 1, 37.) There is no controlling authority which would permit this court to apply any other rule or definition than that declared by the legislature and, with but slight and uncontrolling exception, recognized and followed in this state.

■ Since the enactment of section 500 of the Vehicle Code, convictions on charges of negligent homicide have been upheld where the evidence disclosed the injuries resulting in death were caused by a failure to exercise ordinary care. (*People* v. *Pryor,* 17 Cal. App. (2d) 147 [61 Pac. (2d) 773] ;

*People* v. *Warner*, 27 Cal. App. (2d) 190 [80 Pac. (2d) 737].) In the last-cited case the court expressly rejected the contention that the evidence must disclose facts indicating something more than ordinary negligence. It stated that ''it was only necessary to prove, other than the jurisdictional facts as to time and place, that the appellant was driving a motor vehicle in a negligent manner and that such driving resulted in the death of the person therein named''. The result in such cases appears to be harmonious also with section 195 of the Penal Code, which provides that homicide is excusable when it is committed by accident and misfortune in the doing of a lawful act by lawful means, with usual and ordinary caution and without any unlawful intent. A petition for hearing in this court filed in each of the two last-cited cases was denied. A petition for hearing was granted in the present case for the purpose of resolving the inconsistency deemed to have been created by the decisions in the Driggs and Hurley cases, *supra.*

It is within the function of the legislature to make laws defining what breaches of the public peace shall be made punishable. Accordingly it may specify various degrees of the same crime and require a different measure of punishment for each. It is apparent that by the enactment of section 500 of the Vehicle Code the legislature has specified a lesser degree of punishment when the homicide is committed in the doing of an unlawful act not amounting to a felony while operating any vehicle, or while driving in a negligent manner, than is meted out in the cases of homicides otherwise committed in the doing of an unlawful act not amounting to felony or without due caution and circumspection. (Sec. 192, Pen. Code.) When the legislature has so spoken and the court has stated the law to the jury in the language of the applicable statutes, it is not required to do more. (*People* v. *Fowler, supra; People* v. *Anderson, supra.*)

Therefore, what may amount to a lack of ''due caution and circumspection'' in cases of involuntary manslaughter committed in the doing of a lawful act, or what may constitute the driving of a vehicle ''in a negligent manner'', are questions to be decided by the jury according to the particular facts in each case guided by appropriate instructions from the court. The practical difficulties of obtaining a conviction in automobile homicide cases arising under sec-

tion 192 of the Penal Code may have been the incentive for the enactment of section 500 of the Vehicle Code. That is, in order to foster greater care in the operation of such dangerous instrumentalities, the legislature may have afforded a means by which appropriate punishment may be imposed upon all who have caused death through a breach of duty of due care in such operation.

■ We conclude that the court did not err in refusing the requested instruction which contained a definition of criminal negligence not in accord with the foregoing views as to the requirements of instructions in cases of negligent homicide as defined by section 500 of the Vehicle Code.

■ The contention is also made that the failure of the decedents to equip their bicycles with rear reflectors was a proximate cause of the injuries resulting in death. The court correctly instructed the jury in substance that negligence of the decedents was no defense; that such negligence would exonerate the defendant only if it was the sole proximate cause of the accident, but that the defendant was not exonerated if the jury found that he was guilty of negligence which proximately contributed to the injuries. (*People* v. *Marconi, supra; People* v. *McKee,* 80 Cal. App. 200 [251 Pac. 675]; note, 67 A. L. R. 922, 29 Cor. Jur. 1155, and cases cited; 13 R. C. L., pp. 749, 750.)

The judgment and the order are, and each is, affirmed.

Curtis, J., Knight, J., *pro tem.,* Spence, J., *pro tem.,* Pullen, J., *pro tem.,* and Houser, J., concurred.

EDMONDS, J., Dissenting.—I cannot join in the conclusion of my associates that negligence of the persons struck by the appellant's automobile would exonerate him only if it was the sole proximate cause of the accident.

It appears that after the jurors had considered the case for some time, they returned to the courtroom and the foreman stated they had been unable to agree because ''one member feels that negligence has something to do with it''. To this the trial judge replied, ''It has absolutely nothing to do with it and I made that plain to you in my instructions. . . There is only one basis upon which you can consider the negligence of the decedents, and that is if it is the sole and only cause of the accident.''

Of course, the negligence of one killed in a traffic accident is not a defense to prosecution for negligent homicide as defined in section 500 of the Vehicle Code. However, under that section, the operator of a vehicle is only criminally responsible "when the death of any person ensues . . . as the proximate result of injuries caused by the driving of [such] vehicle in a negligent manner. . . . " And testimony of the decedent's negligence, though not the sole cause of an accident, has a legitimate place in the evidence upon which the trier of fact is to determine whether a defendant was driving "in a negligent manner". As the District Court of Appeal declared in a recent case, although the contributory negligence of a deceased is no defense in a prosecution for manslaughter, it may have an important bearing on the degree of culpability of one charged with that offense. (*People* v. *Hurley,* 13 Cal. App. (2d) 208 [56 Pac. (2d) 978].) In other words, it may be determinative of the question whether, under all the circumstances and conditions existing at the time of the accident, the defendant operated his car with due care and circumspection.

The authorities are reviewed in 5 Am. Jur., p. 930, where it is said: "The familiar rule that contributory negligence of the person injured or killed by the negligence of the defendant in the operation of an automobile bars a recovery in a civil action, has no application to a prosecution for homicide due to criminal negligence in operating an automobile. In such case, the decedent's behavior may have a material bearing upon the question of the defendant's guilt, but if the culpable negligence of the latter is found to be the cause of the death, he is criminally responsible whether the decedent's failure to use due care contributed to the injury or not. In some cases, the conduct of the decedent is material to the extent that it bears upon the question whether, under all the circumstances of the case, the defendant was negligent." (Citing cases.)

Another writer discusses the subject as follows: "The general rule of the criminal law that contributory negligence, unless considered as an element of proximate cause, is no excuse for or defense to crime, applies in prosecutions for homicide caused by the negligent operation of motor vehicles. . . . Except as it may be noted hereafter, it is generally held that the contributory negligence of the decedent

is no defense, excuse, or justification for the homicide. . . . The conduct of the deceased, however, is material in a prosecution of this nature to the extent that it bears upon the negligence or wrongful conduct of the accused, or on the issue whether the conduct of the accused was the proximate cause of the death of the deceased." (Huddy's Cyclopedia of Automobile Law, vol. 9, p. 83, sec. 43.)

In reversing the conviction of an automobile driver who was charged with manslaughter, the Supreme Court of Tennessee declared that the contributory negligence of the boy who was killed would not relieve the defendant of the consequence of his unlawful act. (*Copeland* v. *State,* 154 Tenn. 7 [285 S. W. 565, 49 A. L. R. 605].) "But the conduct of the boy was entitled to consideration in determining whether, under the circumstances, Copeland's negligence was the proximate cause of death, or whether death resulted from an unavoidable accident. . . . Allowance must always be made for misadventure and accident, as distinguished from culpable negligence." The same conclusion was reached in *State* v. *Custer,* 129 Kan. 381 [282 Pac. 1071, 67 A. L. R. 909]. In that case the trial court instructed the jury that contributory negligence was not available as a defense in a criminal prosecution for homicide in the operation of an automobile but that evidence of contributory negligence of the victim was admitted "for whatever it may be worth to you as material evidence bearing upon the question of the defendant's guilt". Upon appeal, the court said that the act of the deceased in getting under the rear of an automobile standing at night on the traveled part of the highway without a red light, was a circumstance to be considered by the jury in determining whether death was or was not caused by unlawful driving, although his conduct did not of itself relieve the defendant of liability. Later the same court said: "Contributory negligence on the part of the deceased is not a defense to a charge of manslaughter. It is only a circumstance determining whether it was or was not caused by the unlawful conduct of the defendant." (*State* v. *Pendleton,* 144 Kan. 410 [61 Pac. (2d) 107].)

So, also, in *Held* v. *Commonwealth,* 183 Ky. 209 [208 S. W. 772], the court decided that although the decedent's negligence was not available to the defendant by way of defense,

it was relevant and competent on the question of whether the defendant was negligent in the operation of the vehicle, and thereby unintentionally committed the homicide.

From the discussion between the foreman of the jury and the judge, it appears that except for the instruction concerning contributory negligence on the part of the persons killed in the accident, the appellant would not have been convicted. Under these circumstances, in my opinion, there has been a miscarriage of justice entitling the appellant to a new trial. (Const., sec. 4½, art. VI.)