## PEOPLE v. KILVINGTON.*

### No. 21,033; March 3, 1894.

#### 36 Pac. 13.

Indictment—Correction.—Where It is Apparent That a Defendant has had a fair and full examination before an examining magistrate, and has been held to appear and answer on a criminal charge, and an information against him has been set aside for some technical error or irregularity, not going to the merits—such as failure to certify the depositions in a homicide case—the court may permit a correction to be made, and a new information filed, without a further examination before a committing magistrate.[1]

Homicide—Evidence.—In a Homicide Case Where Defendant, a police officer, shot at—intending to frighten—deceased, who was running away from a person who was shouting "Stop thief!" the admission of evidence that deceased had gone to the place for a lawful purpose, though improper, is harmless, the real question being whether defendant acted with criminal negligence.

Homicide—Evidence—Impeachment.—On a prosecution of a police officer for killing deceased, who was being pursued by a person shouting "Stop thief!" such person, having testified for defendant, may be impeached by evidence that, a few days before, he had a quarrel with deceased, he having testified that he never saw him before the time of the shooting.

Homicide—Shooting by Police Officer.—On a Prosecution of a police officer for shooting deceased, who was running from a person who was shouting "Stop thief!" defendant having testified that he

---

*For subsequent opinion, see 104 Cal. 86, 43 Am. St. Rep. 73, 37 Pac. 799.

[1] Cited and followed in People v. Lane, 101 Cal. 515, 36 Pac. 17, where the committing magistrate had failed to make, at the conclusion of the examination, a proper indorsement of the commitment on the complaint.

intended to shoot over him, an instruction that act and evil intent must combine to constitute crime is properly refused, the question being whether there was criminal negligence.

Homicide—Shooting Through Negligence.—Where one shoots a person through criminal negligence, his ignorance of the law can form no basis for acquittal.

Homicide—Shooting by Police Officer.—The Fact That the Person whom defendant (a police officer) shot was being pursued by a person shouting "Stop thief!" did not raise an implication that a felony had been committed, by reason of which he might shoot him to effect his arrest.

APPEAL from Superior Court, Santa Clara County; W. A. Lorigan, Judge.

George Kilvington was convicted of manslaughter and appeals. Affirmed.

Wm. P. Veuve for appellant; V. A. Scheller, Spencer & Burchard, E. E. Cothran and W. H. H. Hart, attorney general, for the people.

PER CURIAM.—The defendant, George Kilvington, was informed against by the district attorney of the county of Santa Clara for the crime of murder, alleged to have been committed at said county on the third day of May, 1892, by the felonious killing of one Henry Schmidt. Upon a trial the defendant was convicted of manslaughter, and adjudged to be punished by imprisonment in the state prison of the state of California, at San Quentin, for the term of seven years. The appeal is from the final judgment, and from an order denying a new trial.

The first point made on behalf of appellant is that the court below erred in refusing a motion on his part to set aside the information. The facts essential to a correct understanding of the question involved are as follows: On the twenty-fifth day of May, 1892, defendant was examined before a justice of the peace of San Jose, in the county of Santa Clara, on a charge of having murdered Henry Schmidt, and was held by the magistrate on a charge of manslaughter, in the killing of said Schmidt. On the seventh day of June, 1892, the district attorney of said county filed an information for murder

33

against defendant, for killing said Schmidt, which information was on the fourteenth day of June, 1892, on motion of counsel for defendant, and by consent of counsel for the people, set aside and dismissed, and a new information ordered by the court to be filed by the district attorney against the defendant, upon the ground that the testimony taken by the reporter at the preliminary examination, and by him written out in longhand and filed in the superior court, was not certified to by said reporter before filing with the county clerk; that the original notes of the reporter had not been filed with such clerk; and that neither were filed within ten days after the close of such examination. At the time of the order of dismissal the court also ordered the testimony on file withdrawn to be certified to. Thereupon the transcript of the testimony, duly certified, was filed, together with the original shorthand notes, and the order of the committing magistrate made May 26, 1892, holding defendant for manslaughter as aforesaid, but without any other or further examination before a magistrate. A new information, charging the defendant with the murder of said Schmidt, was thereupon, and on the fifteenth day of June, 1892, duly filed in the superior court, and defendant's motion to dismiss the same was denied. Appellant refers, as authority for his contention, to the case of Ex parte Baker, 88 Cal. 84, 25 Pac. 966, in which this court says: ''And, if the information is set aside upon the ground that the defendant has not been legally committed, it can readily be seen that it would be idle for the court to order another information to be filed, for the same fatal defects would necessarily be present at any future hearing.'' The facts of that case no doubt warranted the expression there used. There, so far as appeared, no other or further cause was shown in support of the second information than the first. The facts here are quite different: (1) It does not appear from the record in this case that the commitment was filed prior to the presentation of the first information. (2) It does affirmatively appear that the reporter's notes were not filed, and that the depositions written out in longhand were not certified, at the time of filing the first information. If it was in fact filed, being for manslaughter, the district attorney was not authorized, in the absence of depositions duly certified, to present an information for any higher offense than that

indicated in the commitment. Under these circumstances the information was properly and promptly set aside, upon the ground that, as to the offense with which the defendant stood charged, there was no evidence ''that before the filing thereof [the information] the defendant had not been legally committed by a magistrate,'' as provided by section 995 of the Penal Code. The first information charging the defendant with murder was beyond and in excess of the jurisdiction of the district attorney, and utterly void. The second information, which was filed within thirty days after commitment, was not so filed until after the commitment, the notes of the reporter, and the depositions written out in longhand, and duly certified, were on file. We have no doubt of the correctness of the following propositions: (1) If A has been properly examined before a magistrate, but no order holding him to appear before a proper court has in fact been made, an information filed against him before the commitment is entered and depositions are sent up is void. (2) In such a case, upon the filing of the order of commitment and depositions, the district attorney may, within the time provided by law, file a proper information; and the fact that the former information has been set aside by the court will not, in such a case, render a second examination and commitment necessary. Section 997 of the Penal Code provides that, if an indictment or information is set aside, the defendant, if in custody, shall be discharged, etc., unless the court directs that the case be resubmitted to the same or another grand jury, or that an information be filed by the district attorney. The evident object of the statute, in authorizing the court to direct the district attorney to file another information when the first had been set aside, was, it is believed, to provide for a class of cases in which a proper examination has been had, but yet, from some informality or omission, the evidence thereof is wanting, or defective, so that it cannot be said, judicially, that the defendant has been, before the filing of the information, legally committed by a magistrate. The case at bar affords a familiar example. The depositions on file brought to the court knowledge that depositions had been taken, and that an examination had been had before a magistrate, but not being duly certified, as required by section 869 of the Penal Code, they lacked the verity essential as a basis for an information for

murder, which could only be founded upon them, because the order of probable cause, if it appeared upon the depositions, or was entered in the docket of the magistrate, or otherwise reduced to writing, as we know, only held the defendant to answer for manslaughter. In People v. Thompson, 84 Cal. 598, 24 Pac. 384, this court held that the court below properly set aside an information because the indorsement on the depositions returned was not in accordance with the statute, and that, having done so, there was no error in directing such depositions to be returned to the justice for proper indorsement, and that such indorsement could be made without a reexamination of the case. In People v. Wallace, 94 Cal., at page 500, 29 Pac. 950, the decision in People v. Thompson was approved, although some doubts may have been entertained as to the broad scope of the reasoning. From the consensus of opinion expressed by this court in different cases, and from the wording of the Penal Code, the conclusion is reached that, where it is apparent that a defendant has had a fair and full primary examination before a committing magistrate, and has been held to appear and answer before a superior court upon a criminal charge, and an information has been filed against him, which has been, upon his motion, set aside for some technical error, or irregularity, not going to the merits of the case, and which may be remedied and a new information filed, the superior court is authorized and empowered, under section 997 of the Penal Code, to permit a correction to be made, and to direct a new information to be filed, without a further or other examination before a committing magistrate, and that the reasoning in Ex parte Baker, 88 Cal. 84, 25 Pac. 966, should be confined to cases in which the information is set aside for causes other than merely technical, and susceptible of remedy without impairing the substantial rights of a defendant. It follows that the court did not err in refusing to set aside the second information filed against defendant.

Louis Schloss was called as a witness on the part of the prosecution, and having identified the spot where deceased was killed, by a pool of blood which he found, and which other witnesses identified as the place of the homicide, was asked the following question: "Do you know of any business he [deceased] had there, on that particular locality, at that time?" Counsel for defendant objected to the question upon

the ground that it is immaterial, irrelevant and incompetent. The objection was overruled, to which ruling an exception was taken. The witness then testified, in substance, that on the third day of May, about 4 to 5 o'clock P. M., he negotiated with deceased, who was a butcher, in regard to the sale to the latter of a lot, situated about one hundred feet from where he was killed, and that deceased said to him that he would go down and see the lot that night, when he closed his shop, as he could not get off before, and would see the witness the next morning. Deceased was shot that night by defendant at about 9 o'clock P. M. In view of testimony introduced later by the defense, this testimony is claimed to have been important. The witness was permitted, also, against the objection of defendant, to draw and exhibit to the jury a diagram of the surroundings, showing the location of the streets, the lot in question, the pool of blood, etc. Testimony of the witness Weisel was also admitted, over defendant's objection, tending to show that deceased was rightfully at the place when he was shot. This testimony as to the reasons why deceased was at the place at which he was killed was, we think, improperly admitted; for the real question was whether the defendant, under the circumstances as they appeared to him, acted recklessly and with criminal negligence; but we think that such testimony was unimportant and not prejudicial to appellant. The defendant was night watchman in Chinatown, San Jose, and was, as the court instructed the jury, "a police officer" of the city of San Jose. On the night of the third day of May, 1892, he had been at Chinatown with one Henry Burgess to show the latter through a cannery which defendant, as a carpenter, had erected, or had aided in erecting. On their return and when on Taylor street, which seems to be a new street, and not fenced, at least on one side, they heard someone cry "Stop him!" or "Stop thief!" and two men were observed running across the open ground northerly, and diagonally to their course, in a direction which, if continued, would have taken them across defendant's line of travel, from twenty feet to twenty yards ahead of defendant and his companion. The two men running were not together, but one was in advance, and the other pursuing him, and crying out to stop him, or "Stop thief!" The night was dark, but the parties were visible at some distance. Defendant ordered the man in ad-

vance to stop, and, as he claims, repeated the order two or three times, until the stranger threw up his hands, when, as defendant claims, he saw something in the man's hands, drew his pistol, and fired, killing the man, who at the time was say thirty feet distant, and who fell upon his face, and who, upon examination, had no weapons, and was, as it proved, Henry Schmidt. Defendant did not, so far as appears, recognize deceased before firing the fatal shot, and, as he testifies, intended to shoot over his head; but the deceased being upon higher ground, by two or three feet, the ball entered his neck. The man in pursuit proved to be one William H. Howard. The testimony of the latter was lengthy, but may be epitomized as follows: He was passing the house of one Mrs. Hayford, when a man ran out of the back yard, who he thought was a criminal, and pursued, crying "Stop!" or "Stop thief!" for some distance, with the result as above stated. There were upon the face of Schmidt, when found dead, bruises and wounds, such as might have been made by a blow or blows of the fist or from a blunt instrument, and which a number of physicians testified must have been inflicted before death. Others were of the opinion these wounds might have been caused by contact with the earth when Schmidt was shot, and fell upon his face. Howard testified that he was not personally acquainted with Schmidt, and had never spoken to him; never had any trouble with him; did not have an altercation with him on the Monday preceding; was not in town that day, etc. In rebuttal, and for the purpose of impeaching the witness Howard, one Harrison was called by the prosecution, and testified that, on the Monday next preceding the Wednesday on which the homicide was committed, the witness Howard had a quarrel with Schmidt, during which he threatened the latter, and used vile and obscene language to him; and the admission of this testimony is assigned as error. The evidence was clearly admissible. The theory of the prosecution was that the contused wounds upon the face of deceased had been inflicted by Howard, and that deceased was fleeing from him, and not as a criminal, when shot; and, to the extent to which it contradicted the testimony of Howard, it was admissible. It tended in some degree to render the testimony of Howard improbable—nothing more.

The court instructed the jury at length, on its own motion, and at the request of counsel for the prosecution and defense, which instructions were as to the right of defendant, as a police officer, to arrest, as provided by law, persons whom he has reasonable cause to believe have committed a felony, and where a felony has in fact been committed, and he has reasonable cause to believe the person arrested to have committed it, his right to arrest at night; his right to use all the force reasonably necessary to effect the arrest, etc. Defendant asked the court to instruct the jury as follows: (1) "The jury are instructed that an act and evil intent must combine, to constitute, in law, a crime, and that each of these elements, to wit, the act and evil intent, must be proven beyond reasonable doubt." The court refused the instruction as asked, and gave the following in lieu thereof: (1) "The jury are instructed that to constitute, in law, a crime, there must exist a union or joint operation of act and intent or criminal negligence." It will be observed that the instruction as asked was erroneous, in that it eliminated entirely what in this case was the important factor, viz., the question of criminal negligence. As given, it was proper. The question of reasonable doubt was properly expounded to the jury elsewhere in the instructions. Like considerations apply to the second and third instructions asked by defendant, and refused by the court. The third is liable to the further objection that it sought to make defendant's ignorance of the law a basis upon which to acquit the defendant. The few exceptional cases in which it is said ignorance of the law prevents the formation of an intent to commit crime are exceptions to a general rule, and have no application to a case where criminal negligence is the main question in issue. The exceptional doctrine found at section 297 of Bishop on Criminal Law has no application here. The length to which this opinion has extended precludes the propriety of noticing seriatim all the instructions given or refused. It is sufficient to say that the jury was fully instructed upon all the issues submitted; that the instructions asked by the defendant and refused by the court were either given in other portions of the charge or in a modified and unexceptionable form, or properly refused as not embodying law applicable to the case.

One proposition further needs to be noticed. Defendant asked the court to give several instructions to the jury upon the subject of "probable cause," of which the following is a sample: "If the jury believes the evidence of the witness Burgess and the defendant, then the court instructs the jury, as a matter of law, that the defendant, at the time of the killing, had reasonable cause to believe that the deceased had committed a felony." And again: "The court instructs the jury that the uncontradicted evidence in this case shows that the defendant had reasonable cause to believe, at the time of the killing, that the deceased had committed a felony." The contention of appellant is that the question of probable cause is one of law, and that the court, upon the evidence, should have instructed the jury as indicated in the foregoing. Assuming for present purposes that the rule in criminal cases is the same as in actions for malicious prosecution, then we think the court should have instructed the jury that no probable cause was shown for believing that Schmidt had committed a felony. The evidence was sufficient to show probable cause to warrant defendant in making an arrest, and, in an action for false imprisonment for detaining Schmidt, would have been, we may assume, a justification of defendant therefor. But how a cry of "Stop him!" or "Stop thief!" raises an implication that a felony has been committed, any more than a misdemeanor, is not apparent. The term "thief" applies equally to one who has committed petty larceny, which is not a felony, as to one guilty of grand larceny, which is a felony; and as an officer may not go to the extreme of slaying one who is only guilty of a misdemeanor, in order to effect his arrest, there should be, even according to appellant's contention, evidence showing that a felony has been committed, not that it may have been, before the court can properly instruct the jury, as matter of law, that an officer has reasonable cause to believe that a felony has been committed. Under the testimony, the question whether defendant had reasonable cause to believe deceased had committed a felony was one of fact, to be determined by the jury, and not a question of law, to be arbitrarily passed upon by the court. The court so viewed it, and instructed the jury fully in that view, and therein committed no error. The instructions upon the question of reasonable doubt were all that were required. The case seems to have

been fairly tried, the defendant well defended, and properly convicted of manslaughter. The judgment and order appealed from are affirmed.

DE HAVEN and HARRISON, JJ.—We dissent. The evidence of Schloss and Weisel, referred to in the foregoing opinion, was clearly irrelevant; and we cannot say that it was not used upon the trial, and in the argument before the jury, to the prejudice of the defendant. In this case it was of the utmost importance to the defendant that the evidence should be confined to the single question before the jury, which was whether the defendant, upon the circumstances as actually presented to him, was guilty of criminal negligence in firing the shot which killed the deceased; and, as the evidence was not so confined, we are of the opinion that the judgment and order should be reversed.